**The STATE of Ohio**

v.

**THOMPSON.**

Court of Common Pleas of Ohio,
Lucas County.

No. CR00–1702.

Decided Nov. 1, 2000.

140

*Julia R. Bates,* Lucas County Prosecuting Attorney, *Louis E. Kountouris* and *Lori L. Olender,* Assistant Prosecuting Attorneys, for plaintiff.

*Thomas J. Szyperski,* for defendant.

FREDERICK H. MCDONALD, Judge.

This cause is before the court upon defendant Ronald Thompson's motion to suppress evidence. Upon consideration of the pleadings, the evidence, the written arguments of counsel, and the applicable law, I find that the motion is not well taken and that it should be denied.

I

On April 12, 2000, officers executed a search warrant issued by a judge of the Lucas County Court of Common Pleas that authorized them to search the premises of defendant, located at 5302 Pageland Drive, Toledo, Ohio, for:

"Bank records and credit card receipts, or any other property that is used by Pedophiles to include; [*sic*] sexually explicit materials, cameras, photographs, magazines, newspapers, motion pictures, video tapes, books, slides, letters, phone books, address books, journals, sexual aids or devices such as petroleum jelly or other lubricants, condoms, dildos, vibrators, or other property which may be used to foster pedophile relationships, Which is in violation of 2907.02, 2907.03, 2907.04, 2907.05, 2907.06, 2907.31, 2907.32.1, 2907.32.2 of the Revised Code."

The issuance of the search warrant was based on an affidavit submitted by Detective Patrick Sullivan of the Maumee Police Department. The affidavit reads:

" * * * [H]e * * * has reason to believe that on the person of/in the vehicle/on the premises known as: 5302 Pageland Drive, Toledo, Ohio 43611, a one story brick ranch, beige and green in color, with a harbor light in the front yard, owned by James Thompson including all outbuildings, sheds, garages, and curtilage of said premises in Washington/Township/Village, Lucas County, Ohio, occupied by

"Ronald E. Thompson, SNN: 270 58 4379, DOB: 011962

"* * *

"This affiant has been a police officer for approximately fifteen years and have been assigned to the Detective Bureau for three and a half years. This affiant has received training in Sex Crimes Investigation as well as Rape Investigation and have investigated numerous sex related crimes.

"On 9 April 2000, CW[1] age 11, and JF[2] age 9, came to the Maumee police station with their Mothers to report that they had been sexually assaulted by Ronald E. Thompson at a hotel in the city of Maumee. Investigation revealed that CW and JF went to the Homewood Suites with Ronald Thompson and two other boys, Thompson's nephew, CM age 11 and JW age 11, in late summer of

---

1. and 2. Initials have been substituted for names of the alleged victims.

1999. It was during this birthday party that the boys state that they were made to perform fellatio on Thompson and he performed fellatio on them. Both were made to stroke Thompson's penis, and he stroked their penises as well. [Footnotes added.]

"CW also told me that Thompson had shown him a photograph of a boy he knew as J.J., naked and lying on a bed.

"CW also told this investigator that there was a stack of these photographs in Thompson's home. During interviews with CM and JW, both stated that they too had been made to perform fellatio on Thompson and he had performed it on them as well. According to CM, on different occasions, Thompson would have them stroke his penis and he would stroke theirs. Both CM and JW told this officer that Thompson had taken nude photographs of them. All four of the boys stated that they had watched pornographic videos with Thompson. During the investigation, CW stated that he had been to hotels in Maumee with Thompson on three occasions, JF on one occasion, CM on four to five occasions and JW four to five times as well. According to CM, this type of activity also occurred at 5302 Pageland Drive, the home of Thompson."

The search warrant was executed at defendant's home, and much evidence was seized. The defendant now moves to suppress evidence, contending that since the affidavit which formed the basis for the search warrant contained unsubstantiated allegations and stale information, it did not contain sufficient probable cause to justify the issuance of the search warrant. In addition, the defendant argues that the "bare bones" affidavit was so lacking in indicia of probable cause that Det. Sullivan's reliance on the search warrant was not reasonable and, therefore, the good faith exception to the exclusionary rule is inapplicable. The state of Ohio filed a memorandum in opposition to defendant's motion to suppress.

## II

In *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, the Supreme Court of Ohio applied a two-step analysis in order to determine whether the exclusionary rule should be applied when a defendant contends that probable cause did not exist to support the issuance of a search warrant. The first step requires a determination of whether probable cause existed to support the issuance of the search warrant. The second step consists of a determination whether the good faith exception to the exclusionary rule is applicable.

## A

With respect to the first step, the court in *George* adopted the "totality of the circumstances" test set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527:

■ " 'In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." '

■ " 'In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.' " *State v. George,* 45 Ohio St.3d at 325, 544 N.E.2d at 641, at paragraphs one and two of the syllabus, citing and quoting *Illinois v. Gates* at 238–239, 103 S.Ct. at 2332–2333, 76 L.Ed.2d at 548, 549.

B

With regard to the second step, a determination of the applicability of the good faith exception to the exclusionary rule, the court in *George* followed *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, and stated in paragraph three of its syllabus:

■ "The Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. * * * " (Citation omitted.)

■ However, evidence obtained as the result of a search warrant will be suppressed if "(1) ' * * * the magistrate or judge * * * was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth * * * '; (2) ' * * * the issuing magistrate wholly abandoned his judicial role * * * '; (3) an officer purports to rely upon ' * * * a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" '; or (4) ' * * * depending on the circumstances of the particular case, a warrant may be

so facially deficient—*i.e.,* in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.'" *George* at 331, 544 N.E.2d at 646, citing *Leon* at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698.

## III

The first issue is whether the affidavit contained sufficient probable cause to justify the issuance of the search warrant. Defendant claims that Det. Sullivan's affidavit contained stale information and unsubstantiated allegations. The affidavit alleged that some of the sexual activity took place in the late summer of 1999. The search warrant was executed on April 12, 2000, approximately eight months after that activity.

The Sixth District Court of Appeals in *State v. Schmitz* (Mar. 1, 1996), Sandusky App. No. S–95–031, unreported, 1996 WL 139496, set forth the general rules regarding the issue of staleness of a search warrant:

"It is fundamental 'that [an] affidavit must contain something affirmatively indicating that there is probable cause at or about the time the search warrant is applied for.' *Coyne v. Watson* (1967), 282 F.Supp. 235, 237.

"A search warrant must present timely information because 'it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case.' *State v. Jones* (1991), 72 Ohio App.3d 522, 526 [595 N.E.2d 485, 487–488], * * * quoting *Sgro v. United States* (1932), 287 U.S. 206, 210, [53 S.Ct. 138, 140, 77 L.Ed. 260, 263].

"The *Jones* court further stated that 'while there is no arbitrary time limit on how old information can be, the alleged facts must justify the conclusion that the subject contraband is probably on the premises to be searched.' *Jones* at 526 [595 N.E.2d at 487–488]." See, generally, 2 LaFave, Search and Seizure (1996), Section 3.7(a), 338.

There is a distinct category of cases where courts in Ohio and other jurisdictions have held that the information in a search warrant is not stale if there is a pattern of criminal conduct or criminal activity of a continuing nature. This category of cases includes a pattern of sex offenses involving pedophiles.

In *State v. Kirsch* (1995), 139 N.H. 647, 662 A.2d 937, the Supreme Court of New Hampshire upheld the issuance of a search warrant in a case involving sexual abuse of children where the defendant's last criminal contact with the

victims was six years before the issuance of the warrant. The court explained its holding as follows:

"We have not, before now, been faced with a case such as this. Other Courts, however, have ruled in similar circumstances that an appreciable lapse of time was no bar to a finding of probable cause to issue a search warrant, in light of the nature of the offense and of the items sought. In *State v. Woodcock*, 407 N.W.2d 603 (Iowa 1987), the court stated that 'it would be reasonable for an issuing magistrate to conclude that a person charged with sexual exploitation of children through photographs and similar items would be likely to retain them for an indefinite period.' *Id.* at 605 (events alleged in affidavit predated warrant application by a year and a half). As the Iowa court explained, unlike the evidence or fruits of other crimes, such as theft or drug offenses, 'the types of material involved here would be more likely to be retained. Their perceived usefulness to the suspect would be of a continuing nature, through gratification obtained by him.' *Id.*

"Similarly, in *People v. Russo*, 439 Mich. 584, 487 N.W.2d 698 (Mich.1992), notwithstanding that the last incident alleged in the affidavit had occurred six and one-half years before, the court upheld a finding of probable cause to believe that a suspected child molester would still have pornographic articles such as video-tapes and photographs at his home.

"* * *

"Although the affidavit [in this case] did not contain a so-called 'pedophile profile, reciting the types of material collected by child molesters and their proclivity for retaining it, we do not believe such a recitation is required to establish probable cause. See *id.* A common-sense inference,' *id.* at 705, about the longevity of child pornography for the sexual abuser of children may reasonably be drawn from the nature of the items themselves, such as the photographs taken of the children. [P]hotographs guarantee that there will always be an image of the child at the age of sexual preference. * * * [Their] retention * * * may also serve to insure that the child keeps the secret, thereby permitting the offender to continue molesting children. *Id.*

"For the foregoing reasons, we think it reasonable for a magistrate to conclude that all the items sought were reasonably connected to the suspected criminal activity and likely to have been retained by the defendant. We therefore uphold the magistrate's finding of probable cause."

Ohio Courts have followed the reasoning of these courts. In *State v. Young* (1988), 37 Ohio St.3d 249, 257, 525 N.E.2d 1363, 1372–1373, reversed on other grounds by *Osborne v. Ohio* (1990), 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98, the Supreme Court of Ohio concluded that under the circumstances, which

involved an offense of a continuing nature, the information stated in the affidavit justified a finding of probable cause when the search warrant was issued. The offense involved allegations in the affidavit that Young had child pornography in his home. The affidavit stated that this pornography was seen by two witnesses approximately three months before the search warrant was executed. Despite the three-month lapse in time between the observations by the witnesses of the child pornography and the execution of the search warrant, the court found that the information in the affidavit was not stale.

The Sixth District Court of Appeals in *Schmitz, supra,* determined that information in an affidavit for a search warrant was not stale. The defendant alleged that sexual contact had last occurred between Schmitz and minor victims about three years before the search warrant was issued. It alleged that sexual contact between Schmitz and a second minor victim had last occurred about ten months before the warrant issued. The affidavit further alleged that Schmitz had photographed both boys and had been attempting to contact both boys for the past ten months to renew the relationships. The court rejected the defendant's claims of staleness and held that the search warrant was issued upon a proper finding of probable cause.

In the present case, I find that the affidavit meets the standards set forth in *George* and the cases discussed above. The information in the affidavit described a pattern of conduct involving numerous acts of sexual misconduct between the defendant and five boys at several different locations. One of those events, which involved four of the boys, occurred approximately seven to eight months before the warrant was issued. The conduct alleged included the taking of pictures of the victims by the defendant and also the showing of pornographic videos. In addition, it was alleged by one of the boys that the defendant had shown him a photograph of another boy lying naked on a bed. Finally one of the boys stated that the activity occurred at defendant's home, the premises to be searched. The information in the affidavit was clearly sufficient to justify a finding that probable cause existed to support the issuance of the search warrant.

## IV

The next issue is whether the good faith exception to the exclusionary rule, set forth in *Leon, supra,* applies. Assuming *arguendo* that probable cause to issue the search warrant did not exist, the exclusionary rule is still inapplicable because none of the four situations, set forth in *Leon, supra,* existed when the warrant was executed. Although defendant maintains that no specific time or dates are set forth in the affidavit concerning when the alleged acts between defendant and the victims occurred, the affidavit is not silent as to a time period. The affidavit alleges that some of the alleged sexual misconduct occurred in the

late summer of 1999, approximately eight months before the search warrant was executed. This conduct was part of an extensive ongoing pattern of misconduct. There is no evidence that Det. Sullivan was not acting in good faith or was unreasonable in relying on the search warrant issued by a common pleas court judge.

## JUDGMENT ENTRY

The defendant Ronald Thompson's motion to suppress is found not well taken, and it is ordered denied.

*Motion denied.*