OPINION *Page 2 
{¶ 1} Appellant Jason R. Birk appeals his conviction in the Fairfield County Court of Common Pleas for two counts of Attempt to Commit Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2923.02, felonies of the third degree. The appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} In April of 2006, Detective Stephanie Russell of the Fairfield County Sheriffs Office was investigating a child abduction case. During the course of the investigation, appellant was identified as a "person of interest." It was also determined that appellant had an outstanding warrant for a misdemeanor probation violation from the Fairfield County Municipal Court.
 {¶ 3} Detective Russell, accompanied by Detective Shad Axe, located appellant at a private home in Lancaster, Ohio. Appellant was staying there with his girlfriend, Andrea Fox. Also living at the home were Fox's two sons, Ryan and Nick, who were age 15 and 18. The detectives spoke with appellant in the driveway of the home for a short time regarding appellant's whereabouts at the time of the abduction. Appellant offered the detectives an alibi on the abduction case. Detective Russell eventually determined that appellant was no longer a "person of interest" in the abduction. However, because appellant had an unrelated warrant for his arrest for a misdemeanor probation violation, Detective Russell placed him under arrest. As Detective Axe handcuffed appellant, Detective Russell read him his Miranda rights.
 {¶ 4} On the way to the Sheriffs Office, Detective Russell asked appellant whether there was any child pornography on his computer. Appellant replied there was *Page 3 
not. However, when Detective Russell asked if a search warrant was obtained would child pornography be found on the computer, appellant stated that he had caught his girlfriend's sons looking at child pornography. According to Detective Russell's testimony, appellant further told her he viewed adult pornography on the Internet. While viewing the pornography, he would receive unsolicited pop-up advertisements for other porn sites. Detective Russell testified that appellant told her that he would open the popup ads, which occasionally would cause him to inadvertently view images of child pornography.
 {¶ 5} Detectives Russell and Axe also spoke with appellant's neighbor, Brandon Black, at his place of employment. Present during the interview was Brandon's father and employer, Richard Black. Detective Russell believed that appellant was doing some work for Brandon Black. Detective Russell testified that Brandon Black told her that appellant recently told him that he had caught Andrea Fox's children viewing pornography that was "young stuff on the computer.
 {¶ 6} Brandon Black testified he never told Detective Russell that Fox's children had viewed child pornography. He also testified that appellant never said anything to him about child pornography. He testified that appellant had indicated the children had gotten into trouble for viewing pornography on the computer. Brandon Black initially testified during the suppression hearing that he might have used the words "young stuff," but then denied using that terminology.
 {¶ 7} Richard Black also testified at the evidentiary hearing. Richard was familiar with Birk because Birk had been an employee of his company and he was a neighbor. Richard stated that he was present the entire time that the Detectives were interviewing *Page 4 
his son, Brandon. Richard confirmed that Brandon had never said anything to Russell about child pornography during the interview. Richard did not believe that Brandon had used the term "young stuff" during the interview.
 {¶ 8} After taking the statements from appellant and Brandon Black, Detective Russell obtained a search warrant for appellant's residence. The only reference to child pornography contained in Detective Russell's investigative notes is the following statement, "I asked Mr. Birk about porn on his computer. He stated that there was a little on the computer and it involved wife-swoping [sic]. I asked if there was any juvenile porn and he stated there was not."
 {¶ 9} Detective Russell explained the absence of reference to child pornography in her investigative notes. She stated that appellant first denied any child pornography on his computer. However, he then admitted to it when threatened with a search warrant. Detective Russell testified that appellant's admission to viewing child pornography is not included in her investigative notes simply because she "didn't feel a need for that."
 {¶ 10} Appellant testified that he asked for an attorney when he was in the driveway of his home being question by Detectives Russell and Axe. He testified that he could not remember being read Miranda at his home or in the cruiser. Appellant testified that no questioning took place in the cruiser. Appellant denied telling the Detectives that anyone had ever viewed child pornography on the computers in his home. Appellant stated that he told the Detective that his girlfriend's children had viewed pornography, not child pornography. Appellant testified that he would not tolerate child *Page 5 
pornography. Appellant stated that there was a discussion of pop-ups on the computer and his response was just an acknowledgment that pop-ups happen.
 {¶ 11} Deputy Shad Axe testified that he accompanied Detective Russell to the Black's place of business. He testified that Detective Russell asked about child pornography and Brandon Black told them that appellant had caught his girlfriend's children looking at child pornography. Deputy Axe stated that Mr. Black might not have used the word "child," but that the question was about child pornography. Deputy Axe testified that when they went to appellant's house they were only there approximately ten minutes and during that time appellant provided an alibi for the child abduction. Appellant did not request counsel nor did he say he would not answer questions. In the cruiser, Detective Russell asked appellant whether he had any child pornography on his computer. Appellant initially stated that he did not. However, when Detective Russell asked what would be found on the computer if a search warrant was obtained, appellant stated that his girlfriend's children had been caught viewing child pornography on the computer.
 {¶ 12} Detective Russell's affidavit in support of the search warrant made the following two allegations to establish probable cause:
 {¶ 13} "Your affiant in the course of her investigation on April 19, 2006, interviewed Jason R. Birk and it was revealed that child pornography was viewed on his computer located at his residence at 1427 Walker Dr. NW, Lancaster, Ohio.
 {¶ 14} "Your affiant also states that on April 19, 2006, she spoke to a neighbor of Jason R. Birk being Brandon Black who stated that Mr. Birk had recently told him that *Page 6 
the children of the female he resided with at the above location had viewed pictures of pornography showing underage individuals.
 {¶ 15} Detective Russell executed the search warrant on April 19, 2006 and seized multiple computers and computer-related equipment. As a result of evidence seized during the search, appellant was indicted on four second-degree felonies for pandering sexually oriented matter involving a minor, four fourth-degree felonies for pandering obscenity involving a minor, and four fifth-degree felonies for illegal use of a minor in nudity-oriented material or performance.
 {¶ 16} Appellant moved to suppress all evidence obtained from execution of the search warrant. The motion to suppress asserts: (1) the search warrant was issued on deliberately false information, and (2) the search warrant was issued on stale information.
 {¶ 17} The trial court conducted an evidentiary hearing and testimony was taken from Detective Russell, Detective Axe, Brandon Black, Richard Black, and appellant.
 {¶ 18} On May 9, 2007, the trial court issued a written opinion denying appellant's motion to suppress evidence obtained from execution of the search warrant.
 {¶ 19} On October 24, 2007, the trial court granted the State's motion to amend counts one and two of the Indictment to Attempt to Commit Pandering Sexually Oriented Matter Involving a Minor in violation of R.C. 2923.02 felonies of the third degree. The trial court further granted the State's motion to dismiss counts three through twelve of the Indictment in exchange for appellant's plea of no contest to the amended counts. The trial court sentenced appellant to serve three years incarceration on each count with the sentences to run consecutively. The appellant was sentenced to *Page 7 
five years of community control sanctions on count two, to begin upon appellant's completion of the prison sentence for count one. Appellant was further sentenced to five (5) years post-release control, to pay court costs and labeled a sexually oriented offender.
 {¶ 20} Appellant timely appealed and raises the following sole assignment of error for our consideration:
 {¶ 21} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED FROM EXECUTION OF A SEARCH WARRANT."
 I. {¶ 22} In his Assignment of Error, appellant claims the trial court erred in denying his motion to suppress. We disagree.
 {¶ 23} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 485; State v. Guysinger (1993), 86 Ohio App.3d 592,621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993), 86 Ohio App. 3d 37,619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When *Page 8 
reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App. 3d 93, 641 N.E. 2d 1172; State v.Claytor (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; Guysinger.
 {¶ 24} In the case at bar, appellant first argues that Detective Russell knowingly made false and misleading statements in her affidavit in support of the search warrant.
 {¶ 25} The first issue is whether the factual findings, as determined by the lower court at the evidentiary hearing on the motion to suppress evidence, were clearly erroneous. Ornelas v. U.S. (1996), 517 U.S. 690,698 116 S.Ct. 1657, 1663. "A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States GypsumCo. (1947), 333 U.S. 364, 395. Moreover, where the evidence would support several conclusions but the lower court has decided to weigh more heavily in one direction, "[s]uch a choice between . . . permissible views of the weight of evidence is not `clearly erroneous'."United States v. Yellow Cab Co. (1949), 338 U.S. 338, 342. "Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination. See, e.g.,United States v. United States Gypsum Co., supra, 333 U.S., at 396,68 S.Ct. at 542. However, when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not *Page 9 
contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error. Cf. United States v.Aluminum Co. of America, 148 F.2d 416, 433 (CA2 1945); Orvis v.Higgins, supra, at 539-540." Anderson v. City of Bessemer (1985),470 U.S. 564, 575, 105 S.Ct. 1504, 1512.
 {¶ 26} In reviewing the affidavit in this case, we are guided by the following instruction by the Ohio Supreme Court: "In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." "[Reviewing courts may not substitute their own judgment for that of the issuing magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which the reviewing court would issue the search warrant. On the contrary, reviewing courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." State v.George (1989), 45 Ohio St.3d 325, 330 544 N.E.2d 640, paragraph two of the syllabus; Illinois v. Gates (1983), 462 U.S. 213, 238-239,102 S.Ct. 2317, internal citations omitted. "`[T]he duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for * * * concluding]' that probable cause existed." `Id. at 329, 544 N.E.2d 640, citing Illinois, 462 U.S. at 238-239.
 {¶ 27} Deference to the judge issuing a warrant, however, is not boundless. Notwithstanding the reasonable reliance on a search warrant exception to Fourth Amendment exclusionary rule, suppression is an appropriate remedy if the magistrate *Page 10 
or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. United States v.Leon (1984), 468 U.S. 897, 914, 104 S.Ct. 3405, 3416. Good faith is no defense where the officer himself is the source of the challenged information. See, United States v. Baxter (6th Cir. 1990), 889 F.2d 731.
 {¶ 28} "To successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either `intentionally, or with reckless disregard to the truth'." State v.Waddy (1992), 63 Ohio St.3d 424, 441, 588 N.E.2d 819, citing Frank v.Delaware (1978), 438 U.S. 154, 155-156, 98 S.Ct. 2674, 2676,57 L.Ed.2d 667, 672. See also, State v. McKnight (2005), 107 Ohio St.3d 101, 105,2005-Ohio-6046 at ¶ 31, 837 N.E.2d 315, 329. "`Reckless disregard' means that the affiant had serious doubts of an allegation's truth." Id. (Citation omitted). "Omissions count as false statements if `designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate'." Id. (Emphasis deleted in original) (Citation omitted). State v. Brown (June 28, 2000), Tuscarawas App. No. 1999AP09005.
 {¶ 29} In Franks v. Delaware (1978), 438 U.S. 154, 98 S.Ct. 2674 the United States Supreme Court held that when the accused proves by a preponderance of the evidence that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that * * * the fruits of the search [must be] excluded to the same extent as if *Page 11 
probable cause was lacking on the face of the affidavit." Id. at 155-156; see, also, State v. Waddy (1992), 63 Ohio St.3d 424, 441,588 N.E.2d 819.
 {¶ 30} "The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence." Concrete Pipe Products of Cal., Inc.v. Construction Laborers Pension Trust for Southern Cal.(1993),508 U.S. 602, 622, 113 S.Ct. 2264, 2279, (1993) (internal quotation marks omitted). In other words, the preponderance standard goes to how convincing the evidence in favor of a fact must be in comparison with the evidence against it before that fact may be found, but does not determine what facts must be proven as a substantive part of a claim or defense. Metropolitan Stevedore Co. v. Rambo (1997), 521 U.S. 121,117 S.Ct. 195 at n. 3.
 {¶ 31} In assessing whether a party has met its burden of proof, the Ohio Supreme Court has stated, "[t]he degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. Cross v. Ledford (1954), 161 Ohio St. 469, 477,120 N.E.2d 118, 123. See also, Rice v. City of Cleveland (1944),144 Ohio St. 299, 58 N.E. 768.
 {¶ 32} It is fundamental that the weight of the evidence and credibility of witness are primarily for the trier of the facts.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. This principle is applicable to suppression *Page 12 
hearings as well as trials. State v. Fanning (1982), 1 Ohio St.3d 19,20, 437 N.E.2d 583, 584.
 {¶ 33} In the case at bar appellant argues that the basis for probable cause set forth in Detective Russell's affidavit were that appellant had revealed that child pornography was viewed on his computer, and Brandon Black said appellant had recently told him that Fox's children had viewed child pornography. Appellant denied making such statements and further contends that Detective Russell's own investigative notes failed to support the allegations in her affidavit.
 {¶ 34} The detective's investigative notes are not inconsistent with her testimony or her affidavit if the affidavit is viewed as simply a continuation of Detective Russell's investigation. As the trial court noted, "[t]he affidavit specifically states that `Your affiant in the course of her investigation on April 19, 2006, interviewed Jason R. Birk and it was revealed that child pornography was viewed on his computer located at his residence at 1427 Walker Dr. NW, Lancaster, Ohio,' and `Your affiant also states that on April 19, 2006, she spoke with a neighbor of Jason R. Birk being Brandon Black who stated that Mr. Birk had recently told him that the children of the female he resided with at the above location had viewed pictures of pornography showing underage individuals.' (Emphasis added). The search warrant was obtained and executed on the day the interviews took place."
 {¶ 35} In Mays v. City of Dayton the United States Court of Appeals for the Sixth Circuit Court observed, "[affidavits in support of search warrants `are normally drafted by nonlawyers in the midst and haste of a criminal investigation.' United States v. Ventresca, 380 U.S. 102, 108,85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). An affiant *Page 13 
cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation. United States v.Colkley, 899 F.2d 297, 302 (4th Cir. 1990). Clearly an affidavit should not be judged on formalities, as long as probable cause is evident." (1998), 134 F.2d 809, 815.
 {¶ 36} The same can be said of an officer's investigative notes. It is reasonable for an officer to believe that it is unnecessary to include information in the investigative notes if that information is included in the affidavit. The question is whether such omission or inconsistencies rise to the level of a false statement, made either intentionally, or with reckless disregard to the truth.
 {¶ 37} In the case at bar, both Detective Russell and Deputy Axe testified that while appellant initially stated that he did not have any child pornography on his computer, when asked what a search warrant would reveal, appellant told them that his girlfriend's children had viewed child pornography on the computer. Both Detective Russell and Deputy Axe testified that Brandon Black stated that appellant had told him that appellant's girlfriend's children had viewed child pornography on the computer. While there is a question of whether Mr. Black used the words "child," "kiddy or "young stuff" in referring to the pornography, both officers believed that Brandon Black was referring to child pornography. Brandon Black initially testified during the suppression hearing that he might have used the words "young stuff," but then denied using that terminology. Appellant does not deny telling the police he viewed pornography on the computer. Nor does appellant dispute that he told Mr. Black that the minors had viewed pornography on the computer. The sole contention is whether any mention was made of "child" pornography. *Page 14 
 {¶ 38} Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false. See Rice v. City of Cleveland, 114 Ohio St. 299,58 N.E.2d 768. As in most cases, the evidence is in conflict in this case. The trial judge, having heard the witnesses testify, was in a far better position to evaluate their testimony than a reviewing court. There is substantial evidence in the record upon which he could base his findings of fact. Such evidence, if he believed certain witnesses, was sufficient to produce in his mind a firm belief or conviction that Detective Russell did not include a false statement knowingly and intentionally, or with reckless disregard for the truth, in the warrant affidavit.Cross v. Ledford (1954), 161 Ohio St. 469, 478, 120 N.E.2d 118, 124.
 {¶ 39} Probable cause to search does not require proof that a crime was actually committed, merely the fair probability that evidence of a crime will be found at the location described. State v. George (1989),45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus. The facts in the affidavit fully supported a finding of probable cause.
 {¶ 40} Appellant next contends that the search warrant was issued on stale information because the affidavit in support failed to provide dates when child pornography was viewed on the computer. We disagree.
 {¶ 41} In State v. George (1989), 45 Ohio St.3d 325, the Ohio Supreme Court held that probable cause exists only when there is a fair probability that evidence will be found in a particular place.
 {¶ 42} Probable cause must exist at or about the time of the application for a search warrant. Sgro v. United States (1932),287 U.S. 206, 53 S. Ct. 138. However, *Page 15 
as the court noted in United States v. Johnson (10th
Cir. 1972), 461 F. 2d 285 "it should be noted that the validity of probable cause should not be qualified by simply counting the number of days between the occurrence of the facts relied upon and the issuance of the affidavit. Together with the element of time, we must consider the nature of the unlawful activity. Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites fact indicating activity of protracted and continuous nature, a course of conduct, the passage of time becomes less significant." Id. at 287. See also, United States v. Harris
(6th Cir. 1973), 482 F. 2d 1115, 1119.
 {¶ 43} The affidavit in the case at bar specifically states, "Your affiant in the course of her investigation on April 19, 2006, interviewed Jason R. Birk and it was revealed that child pornography was viewed on his computer located at his residence at 1427 Walker Dr. NW, Lancaster, Ohio." Further "Your affiant also states that on April 19, 2006, she spoke with a neighbor of Jason R. Birk being Brandon Black who stated that Mr. Birk had recently told him that the children of the female he resided with at the above location had viewed pictures of pornography showing underage individuals." The search warrant was obtained and executed on the day the interviews took place.
 {¶ 44} Ohio courts have recognized that the continuing nature of sexual offenses involving minors often justifies a finding of probable cause where the information supplied in an affidavit identifies conduct that occurred several months prior to the warrant's issuance. See Statev. Van Voorhis, 3rd Dist. No. 8-07-23, 2008-Ohio-3224 *Page 16 
at ¶ 75; State v. Rogers, 12th Dist. No. 2006-03-055, 2007-Ohio-1890
at ¶ 43; State v. Thompson (C.P. 2000), 110 Ohio Misc.2d 139, 145-146,745 N.E.2d 1159.
 {¶ 45} In State v. Young (1988), 37 Ohio St.3d 249, 257,525 N.E.2d 1363, 1372-1373, reversed on other grounds by Osborne v. Ohio (1990),495 U.S. 103, 110 S.Ct. 1691 "the Supreme Court of Ohio concluded that under the circumstances, which involved an offense of a continuing nature, the information stated in the affidavit justified a finding of probable cause when the search warrant was issued. The offense involved allegations in the affidavit that Young had child pornography in his home. The affidavit stated that two witnesses saw this pornography approximately three months before the search warrant was executed. Despite the three-month lapse in time between the observations by the witnesses of the child pornography and the execution of the search warrant, the court found that the information in the affidavit was not stale." State v. Thompson, supra 110 Ohio Misc.2d 146-147,745 N.E.2d at 1164-1165.
 {¶ 46} Based upon these facts, and noting that conduct involving child pornography is of a continuing nature, the trial court correctly concluded that the information set forth in the affidavit was not stale at the time the warrant was issued. We find the affidavit to provide sufficient probable cause for the execution of the search warrant. The affidavit in the case at bar justifies a conclusion that the activity involving the appellant is more than an isolated incident.
 {¶ 47} Accordingly, the trial court did not err in overruling appellant's motion to suppress.
 {¶ 48} Appellant's sole assignment of error is denied. *Page 17 
 {¶ 49} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is hereby affirmed.
 Gwin, P.J., Farmer, J., and Edwards, J., concur. *Page 18 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is hereby affirmed. Costs to appellant. *Page 1