OPINION
{¶ 1} Appellant Bryan W. Bates appeals his conviction and sentence entered in the Guernsey County Court of Common Pleas on 12 counts of Pandering Sexually Oriented Matter Involving a Minor and 30 counts of Illegal Use of a Minor in Nudity Oriented Material or Performance.
 {¶ 2} Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} This case arises from activities conducted by employees of the federal government in the course of an investigation referred to as Operation Camelot. Operation Camelot was a joint international investigation between the United States Immigrations and Customs Enforcement (I.C.E.) and Canadian authorities. (T. at 65). I.C.E. is a bureau within the United States Department of Homeland Security. (T. at 64). The primary focus of Operation Camelot was to target those individuals in possession of child pornography via the internet. (T. at 65). Canadian authorities became aware of such an individual in the course of this investigation by the name of Matthew Hughes with a screen name of good_guy_matt@yahoo.com (good_guy_matt). (T. at 65). After arresting Mr. Hughes, Canadian officials determined that Hughes had been in contact with an individual with the screen namebrandi_bates8@yahoo.com (brandi_bates8) and that such individual may be in possession of child pornography. (T. at 66).
 {¶ 4} I.C.E. was notified about brandi_bates8 and issued subpoenas to Yahoo! and Suddenlink Internet Service Provider to determine the address and location of the individual to whom the username brandi_bates8 was registered. (T. at 69-69). Records *Page 3 
indicated that the username was held by an individual living at 347 West Main Street in Byesville, Ohio. (T. at 70).
 {¶ 5} On May 22, 2008, Agents Halsey and Bryant of the Columbus, Ohio, office of the I.C.E. visited this address, the home of Appellant, and spoke with Appellant's minor daughter. (T. at 70-71). The agents left a business card with Appellant's daughter with instructions to have her parents contact them. (T. at 72).
 {¶ 6} Thereafter, Agents Halsey and Bryant, along with Detective Sergeant John Davis and Detective Sergeant Ron Pollock, both of the Guernsey County Sheriff's Department, obtained a search warrant for Appellant's residence. When the officers returned to Appellant's residence to execute said search warrant, Appellant had returned to the home. (T. at 73). Pursuant to the search warrant, officers seized four computers from Appellant's home, including a Dell tower. (T. at 105).
 {¶ 7} As a result of the search, Appellant Bryan Bates was indicted by a Guernsey County Grand Jury on June 29, 2007. The indictment contained twelve counts of Pandering Sexually Oriented Matter Involving a Minor, in violation of R.C. 2907.322(A)(1), all felonies of the second degree. The indictment contained thirty counts of Illegal Use of a Minor in Nudity Oriented Material or Performance, in violation of R.C. 2907.323(A)(3), all felonies of the fifth degree.
 {¶ 8} On July 16, 2007, Appellant, through counsel, entered a plea of not guilty to all charges contained in the indictment.
 {¶ 9} On October 31, 2007, Appellant, through counsel, filed a Motion to Suppress the search warrant. *Page 4 
 {¶ 10} On December 14, 2007, the Trial Court heard oral arguments regarding the Motion to Suppress, and on December 19, 2007, the trial court denied Appellant's Motion to Suppress.
 {¶ 11} A jury trial was held in the Guernsey County Court of Common Pleas on March 25, 2008, March 26, 2008, and March 27, 2008.
 {¶ 12} At trial, Agent Bryant of the I.C.E. testified as an expert in the field of computer forensics regarding the information retrieved from the Dell tower retrieved from Appellant's residence. (T. at 112). Agent Bryant testified regarding the process of retrieving information from the Dell tower (T. at 113-115) and testified that, after finding images containing child pornography in the field test at Appellant's residence (T. at 116), he discovered forty-two (42) images of child pornography during the extended test performed on Appellant's computer in the I.C.E. computer lab. (T. at 128). Agent Bryant testified that said images were retrieved from various locations on Appellant's Dell tower. (T. at 128). The images were found in the temporary internet files, the My Pictures folder, the Yahoo! messenger photo-sharing cache, and the lost files sections of the computer. (T. at 128).
 {¶ 13} Appellant's wife, Brandi Bates, testified that during their marriage, accounts were placed in her name instead of her husband's due to his poor credit rating. (T. at 311). Mrs. Bates further testified that she and Appellant did not share a bedroom, and that the Dell tower containing the images of child pornography was located in "his [Appellant's] room." (T. at 313). She testified that the only reason she used the Dell tower and the attached monitor was to check her bank account and to make purchases on eBay. (T. at 315). *Page 5 
 {¶ 14} Appellant's daughter, Ariel Bates, testified that she, her mother Brandi Bates, and Appellant were the only persons residing in their home at the time the computers were seized. (T. at 333). Miss Bates testified that the only time she used the Dell tower and the attached monitor was to research and print school assignments. (T. at 337).
 {¶ 15} At trial, James R. Hurley, one of Appellant's work superiors testified that Appellant had been with him during part of the mornings of September 28, 2006, and October 11, 2006. (T. at 413-416).
 {¶ 16} The case was submitted to the jury in the late morning on March 27, 2008, and the jury returned with a verdict in the afternoon of March 27, 2008. Appellant was found guilty of all counts contained in the indictment and was sentenced to an aggregate term of thirteen (13) years in the Ohio Department of Rehabilitation and Corrections.
 {¶ 17} Appellant now appeals, assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 18} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN OVERRULING APPELLANT'S MOTION TO SUPPRESS WHERE THE SEARCH WARRANT WAS INVALID BECAUSE THE AFFIDAVIT UPON WHICH THE SEARCH WARRANT WAS BASED DID NOT ESTABLISH PROBABLE CAUSE AND CONTAINED FALSE, MISLEADING, AND STALE INFORMATION.
 {¶ 19} "II. UNDER EVIDENCE RULE 702, THE TRIAL COURT ERRED IN PERMITTING A COMPUTER FORENSICS EXPERT TO TESTIFY AS TO HIS *Page 6 
EXPERT OPINION OF WHETHER THE PICTURES THAT ARE THE SUBJECT OF THE INDICTMENT CONTAIN AN ACTUAL CHILD.
 {¶ 20} "III. THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW WAS VIOLATED BECAUSE THE CONVICTIONS WERE BASED ON INSUFFICIENT EVIDENCE.
 {¶ 21} "IV. THE DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 22} "V. THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 I. {¶ 23} In his first assignment of error, Appellant argues that the trial court erred in denying his motion to suppress. We disagree.
 {¶ 24} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. State v. Curry (1994), 95 Ohio App.3d 93,96; State v. Claytor (1993), 85 Ohio App.3d 623, 627; State v.Guysinger (1993), 86 Ohio App.3d 592. *Page 7 
 {¶ 25} In the instant appeal, Appellant's challenge of the trial court's ruling on his motion to suppress is based on the third method. Accordingly, this court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in this case.
 {¶ 26} Appellant argues the affidavit in question contained false and misleading statements, that the officers lacked a good faith basis to rely upon the warrant, and further, that the information contained in said warrant was stale.
 {¶ 27} In reviewing the affidavit in this case, we are guided by the following instruction by the Ohio Supreme Court:
 {¶ 28} "In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." State v. George (1989),45 Ohio St.3d 325.
 {¶ 29} "[R]eviewing courts may not substitute their own judgment for that of the issuing magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which the reviewing court would issue the search warrant. On the contrary, reviewing courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." Id. at paragraph two of the syllabus; Illinois v. Gates (1983), 462 U.S. 213,238-239, 102 S.Ct. 2317, internal citations omitted. *Page 8 
 {¶ 30} "[T]he duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for * * * conclud[ing]' that probable cause existed." Id. at 329, 45 Ohio St.3d 325, citingIllinois, 462 U.S. at 238-239.
 {¶ 31} Deference to the judge issuing a warrant, however, is not boundless. Notwithstanding the reasonable reliance on a search warrant exception to Fourth Amendment exclusionary rule, suppression is an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. United States v. Leon (1984), 468 U.S. 897, 914, 104 S.Ct. 3405,3416, 82 L.Ed.2d 677. Good faith is no defense where the officer himself is the source of the challenged information. See, United States v.Baxter (6th Cir. 1990), 889 F.2d 731.
 {¶ 32} In the case sub judice, Appellant argues that the information in the affidavit stating that Appellant chatted with Matthew Hughes regarding child abuse and that the information obtained from Yahoo identified the user as Brandi Bates with mailing address of 347 West Main Street, Byesville, Ohio, 43723, was false and misleading and that, without such statements, the affidavit fails to establish probable cause.
 {¶ 33} "To successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either `intentionally, or with reckless disregard to the truth'." State v.Waddy (1992), 63 Ohio St.3d 424, 441, 588 N.E.2d 819, citing Frank v.Delaware (1978), 438 U.S. 154, 155-156, 98 S.Ct. 2674, 2676,57 L.Ed.2d 667, 672. See also, State v. McKnight (2005), 107 Ohio St.3d 101, 105,2005-Ohio-6046 at ¶ 31, *Page 9 837 N.E.2d 315, 329. "Reckless disregard' means that the affiant had serious doubts of an allegation's truth." Id. (Citation omitted). "Omissions count as false statements if `designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate'." Id. (Emphasis deleted in original) (Citation omitted).State v. Brown (June 28, 2000), Tuscarawas App. No. 1999AP09005.
 {¶ 34} In Franks v. Delaware (1978), 438 U.S. 154, 98 S.Ct. 2674,57 L.Ed.2d 667 the United States Supreme Court held that when the accused proves by a preponderance of the evidence that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that * * * the fruits of the search [must be] excluded to the same extent as if probable cause was lacking on the face of the affidavit." Id. at 155-156; see, also, State v. Waddy
(1992), 63 Ohio St.3d 424, 441, 588 N.E.2d 819.
 {¶ 35} "The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence." Concrete Pipe Products of Cal., Inc.v. Construction Laborers Pension Trust for Southern Cal.(1993),508 U.S. 602, 622, 113 S.Ct. 2264, 2279, 124 L.Ed.2d 539, (1993) (internal quotation marks omitted). In other words, the preponderance standard goes to how convincing the evidence in favor of a fact must be in comparison with the evidence against it before that fact may be found, but does not determine what facts must be proven as a substantive part of a claim or *Page 10 
defense. Metropolitan Stevedore Co. v. Rambo (1997), 521 U.S. 121,117 S.Ct. 195 at n. 3.
 {¶ 36} In assessing whether a party has met its burden of proof, the Ohio Supreme Court has stated, "[t]he degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. Cross v. Ledford (1954), 161 Ohio St. 469, 477,120 N.E.2d 118, 123. See also, Rice v. City of Cleveland (1944),144 Ohio St. 299, 58 N.E. 768.
 {¶ 37} Upon review of the warrant and affidavit, we do not find that Appellant has shown that such statements contained therein were knowingly false or intentionally misleading.
 {¶ 38} At the suppression hearing both Detective Sergeant Ron Pollock and Detective Sergeant John Davis testified as to the Guernsey County Sheriff's Department's participation and support in I.C.E.'s investigation of Appellant. Det. Sgt. Pollock testified that while he signed the Affidavit in support of the search warrant, the majority of the information contained therein was provided by Agent Cameron Bryant from I.C.E. (T. at 35). He further testified that the Guernsey County Sheriff's Department had worked with I.C.E. in the past, and that it was the policy of the Sheriff's Department to sign the search warrant affidavits in their county. (T. at 30, 37).
 {¶ 39} The affidavit also contained detailed information from Det. Sgt. Ron Pollock which stated that the Guernsey County Sheriff's office had received an *Page 11 
anonymous tip that Appellant was engaged in activity similar to the activity contained in a 2004 complaint wherein he was charged with voyeurism alleging that he was taking nude photographs of his minor daughter and posting them on the internet. The affidavit also recited facts obtained through an investigation conducted by I.C.E. stating that Appellant had been identified as an individual known to have been involved in a "chat" in a "chat room" discussing child sexual abuse with one Matthew Hughes, who had been charged with numerous child pornography offenses.
 {¶ 40} It is fundamental that the weight of the evidence and credibility of witnesses are primarily for the trier of the facts.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. This principle is applicable to suppression hearings as well as trials. State v. Fanning (1982), 1 Ohio St.3d 19, 20,437 N.E.2d 583, 584.
 {¶ 41} Appellant further argues that the information obtained from Yahoo did not provide an actual physical address but instead included the IP address of the location where the account for brandi_bates8 was registered. Agent Bryant actually had filed a subpoena to the internet service provider, Suddenlink, who then provided them with the name and physical address. (T. at 99-102).
 {¶ 42} In Mays v. City of Dayton the United States Court of Appeals for the Sixth Circuit Court observed, "[a]ffidavits in support of search warrants `are normally drafted by nonlawyers in the midst and haste of a criminal investigation.' United States v. Ventresca, 380 U.S. 102, 108,85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation. United States v. Colkley, 899 F.2d 297, 302
(4th Cir. 1990). *Page 12 
Clearly, an affidavit should not be judged on formalities as long as probable cause is evident." (1998), 134 F.2d 809, 815.
 {¶ 43} The trial judge, having heard the witnesses testify, was in a far better position to evaluate their testimony than a reviewing court. There is substantial evidence in the record upon which he could base his findings of fact. Such evidence, if he believed certain witnesses, was sufficient to produce in his mind a firm belief or conviction that Detective Sergeant Pollock did not include a false statement knowingly and intentionally, or with reckless disregard for the truth, in the warrant affidavit. Cross v. Ledford (1954), 161 Ohio St. 469, 478,120 N.E.2d 118, 124.
 {¶ 44} Probable cause to search does not require proof that a crime was actually committed, merely the fair probability that evidence of a crime will be found at the location described. State v. George (1989),45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus. The facts in the affidavit fully supported a finding of probable cause.
 {¶ 45} Appellant next contends that the search warrant was issued on stale information because the affidavit in support failed to suggest that criminal activity was occurring at Appellant's home on May 22, 2007. We disagree.
 {¶ 46} In State v. George, supra, the Ohio Supreme Court held that probable cause exists only when there is a fair probability that evidence will be found in a particular place.
 {¶ 47} Probable cause must exist at or about the time of the application for a search warrant. Sgro v. United States (1932),287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260. However, as the court noted inUnited States v. Johnson (10th Cir. 1972), 461 F.2d 285 *Page 13 
"it should be noted that the validity of probable cause should not be qualified by simply counting the number of days between the occurrence of the facts relied upon and the issuance of the affidavit. Together with the element of time, we must consider the nature of the unlawful activity. Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of protracted and continuous nature, a course of conduct, the passage of time becomes less significant." Id. at 287. See also, United States v. Harris (6th Cir. 1973), 482 F.2d 1115, 1119.
 {¶ 48} Ohio courts have identified a number of factors to consider in determining whether the information contained in an affidavit is stale, including the character of the crime, the criminal, the thing to be seized (as in whether it is perishable), the place to be searched, and whether the affidavit relates to a single isolated incident or ongoing criminal activity. State v. Prater, Warren App. No. CA2001-12-114, at ¶ 13. In child pornography cases, these factors are so closely intertwined that consideration of one necessarily involves consideration of the others.
 {¶ 49} Ohio courts have recognized that the continuing nature of sexual offenses involving minors often justifies a finding of probable cause where the information supplied in an affidavit identifies conduct that occurred several months prior to the warrant's issuance. SeeState v. Van Voorhis, 3rd Dist. No. 8-07-23, 2008-Ohio-3224 at ¶ 75;State v. Rogers, 12th Dist. No. 2006-03-055, 2007-Ohio-1890 at ¶ 43;State v. Thompson (C.P. 2000), 110 Ohio Misc.2d 139, 145-146. *Page 14 
 {¶ 50} Similarly, Federal courts addressing challenges to search warrants in child pornography cases, particularly those involving images stored on a computer, typically employ a staleness analysis sensitive to technology and to the particular criminal activity at issue. SeeUnited States v. Miller (M.D.Fla. 2006), 450 F.Supp.2d 1321, 1335. "[T]raditional concepts of staleness that might apply to the issuance of search warrants * * * do not mechanically apply to situations, as here, where the object of the search is for images of child pornography stored on a computer." Id. United States v. Lacy (C.A.9, 1997), 119 F.3d 742,745 (upholding search warrant based on information ten months old because "the [agent] explained that collectors and distributors of child pornography value their sexually explicit materials highly, `rarely if ever' dispose of such material, and store it `for long periods' in a secure place, typically in their homes"); United States v. Harvey
(C.A.3, 1993), 2 F.3d 1318, 1322-23 (concluding that a warrant was not based on stale information, in part because those who collect child pornography tend to keep it); United States v. Ricciardelli (C.A.1, 1993), 998 F.2d 8, 12 n. 4 (stating, "history teaches that [pornography] collectors prefer not to dispose of their dross, typically retaining obscene materials for years"); United States v. Rabe (C.A.9, 1988),848 F.2d 994, 996 (upholding warrant despite two-year delay between original seizures and warrant because more recent letters indicated that pornographic material was still being kept by the defendant).
 {¶ 51} In State v. Young (1988), 37 Ohio St.3d 249, 257, reversed on other grounds by Osborne v. Ohio (1990), 495 U.S. 103, 110 S.Ct. 1691, the Supreme Court of Ohio concluded that under circumstances involving an offense of a continuing nature, the information stated in the affidavit justified a finding of probable cause when the *Page 15 
search warrant was issued. The offense involved allegations in the affidavit that Young had child pornography in his home. The affidavit stated that two witnesses saw this pornography approximately three months before the search warrant was executed. Despite the three-month lapse in time between the observations by the witnesses of the child pornography and the execution of the search warrant, the court found that the information in the affidavit was not stale." State v.Thompson, supra 110 Ohio Misc.2d 146-147.
 {¶ 52} Based upon these facts, and noting that conduct involving child pornography is of a continuing nature, the trial court correctly concluded that the information set forth in the affidavit was not stale at the time the warrant was issued.
 {¶ 53} We find the affidavit to provide sufficient probable cause for the execution of the search warrant. The affidavit in the case at bar justifies a conclusion that the activity involving Appellant is more than an isolated incident.
 {¶ 54} Accordingly, the trial court did not err in overruling Appellant's motion to suppress.
 {¶ 55} Appellant's first assignment of error is overruled.
 II. {¶ 56} In his second assignment of error, Appellant argues that the trial court erred in permitting certain expert testimony under Evid. R. 702. We disagree.
 {¶ 57} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343. In order to find an abuse of that discretion, we must determine that the trial court's decision *Page 16 
was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 58} The trial court is the gatekeeper on issues of admissibility and qualifications of an expert witness. Evid. R. 104(A). Qualification of an expert is controlled by Evid. R. 702, which states the following:
 {¶ 59} "A witness may testify as an expert if all of the following apply:
 {¶ 60} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 61} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 62} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information.* * *"
 {¶ 63} Further, under Evid. R. 701, a witness may testify as to his perceptions that are "helpful to a clear understanding of [his] testimony or the determination of a fact in issue."
 {¶ 64} In the instant case, Agent Bryant was offered and accepted as an expert in the field of computer forensics. (T. at 112). Additionally, he was permitted to give his opinion that the pictures found on Appellant's computer involved minors in a state of nudity and/or minors engaging in sexual activity. (T. at 137-163, 178-192, 206-242).
 {¶ 65} The State must prove beyond a reasonable doubt that a real child is depicted, to support a conviction for possession of child pornography under either R.C. § 2907.322 or § 2907.323. In most cases, meeting this burden will require presentation of *Page 17 
the images themselves. Expert witnesses may not be needed if the State's assertion that an actual child is involved goes unchallenged. State v.Tooley (2007), 114 Ohio St.3d 366, 381.
 {¶ 66} In the case before this Court, Appellant did not challenge the State's position that the images found on Appellant's computer were of actual minor children and were not virtual images. We therefore find that expert testimony was not required in this case as the images were presented to the jury. Juries are capable of distinguishing between real and virtual images; and admissibility remains within the province of the sound discretion of the trial judge"); United States v. Deaton (C.A.8, 2003), 328 F.3d 454, 455; United States v. Hall (C.A.11, 2002),312 F.3d 1250, 1260.
 {¶ 67} We therefore find that in the instant case Agent Bryant's experience in this field was extensive. However, even if such admission of his testimony was error, based on his lack of admission as an expert in this area, such error is harmless as the jury was able to make such determination for themselves.
 {¶ 68} Appellant's second assignment of error is overruled.
 III., IV. {¶ 69} In his third and fourth assignments of error, Appellant argues that his conviction was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 70} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546 (stating that *Page 18 
"sufficiency is the test of adequacy"); State v. Jenks (1991),61 Ohio St.3d 259 at 273, 574 N.E.2d 492 at 503. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781; Jenks, 61 Ohio St.3d at 273, 574 N.E.2d at 503.
 {¶ 71} Weight of the evidence addresses the evidence's effect of inducing belief. State v. Wilson, 713 Ohio St.3d 382, 387-88,2007-Ohio-2202 at ¶ 25-26; 865 N.E.2d 1264, 1269-1270. "In other words, a reviewing court asks whose evidence is more persuasive-the state's or the defendant's? Even though there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a lower court's holdings." State v. Wilson, supra. However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, supra, 78 Ohio St.3d at 387. (Quoting State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, supra.
 {¶ 72} Employing the above standard, we believe that the state presented sufficient evidence from which the trier of fact could conclude, beyond a reasonable doubt, that Appellant committed the offenses pandering sexually oriented matter involving a minor and illegal use of a minor in nudity oriented material or performance. *Page 19 
 {¶ 73} In the case sub judice, Appellant was charged and convicted of twelve counts of Pandering Sexually Oriented Matter Involving a Minor, in violation of R.C. § 2907.322(A)(1), which reads as follows:
 {¶ 74} "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
 {¶ 75} "(1) Create, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality;"
 {¶ 76} With regard to these convictions, Appellant argues that the State failed to prove Appellant "recorded" images showing a minor participating or engaging in sexual activity. Appellant argues that while he may have been an "end user" of the images, he should not have been found guilty as one who "recorded" said images.
 {¶ 77} Initially we note that the term "record" is not defined in the statute and that in the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used."Wachendorf v. Shaver (1948), 149 Ohio St. 231.
 {¶ 78} The American Heritage® Dictionary of the English Language, Fourth Edition, includes the following definition for "record":
 {¶ 79} "[t]o register (sound or images) in permanent form by mechanical or electrical means for reproduction." *Page 20 
 {¶ 80} When read in the context of the other terms in this section such as create, reproduce and publish, we find that the evidence was sufficient to show that Appellant recorded, created and or published the images to his computer.
 {¶ 81} Appellant was also charged and convicted of thirty (30) counts of Illegal use of a minor in nudity-oriented material or performance, in violation of R.C. § 2907.323, which states:
 {¶ 82} "(A) No person shall do any of the following:
 {¶ 83} "(3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless one of the following applies:
 {¶ 84} "(a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance.
 {¶ 85} "(b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred."
 {¶ 86} Appellant argues that the State failed to prove Appellant was the person who possessed the images which are the subject of this case. Appellant argues that the State only proved that the images were found in temporary internet file folders or the Yahoo cache file but never proved Appellant was the one on the computer when these images were received. *Page 21 
 {¶ 87} R.C. § 2901.21(D)(1) defines "possession" as "a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession."
 {¶ 88} At the trial in this matter, Agent Bryant testified that images were saved to the "My Pictures" folder on Appellant's computer and also that images were received through the photo sharing system which is part of Yahoo! Messenger and that those images were saved in the temporary internet cache. (T. at 149, 151, 159, 162, 177, 179, 182-189). Furthermore, in his recorded statement, which was admitted at trial as Exhibit J, Appellant admitted that he was the only person with access to the brandi_bates8 Yahoo! Account. Additionally, Appellant's wife testified that her use of the Dell computer was limited to banking transaction and Ebay related activity. (T. at 315). Likewise, his daughter testified that she only used the computer was to do research and print school assignments. (T. at 337).
 {¶ 89} In a case similar to the one before us, the Ninth District Court of Appeals held that evidence was sufficient to show that an Appellant knowingly possessed pornographic images involving minors, as required to support conviction for pandering sexually oriented material involving minor where data trails led to temporary internet files on Appellant's computer which showed that Appellant had accessed pornographic websites featuring "teens" and that he opened thumbnail images from websites that depicted minors engaged in sexual activity.State v. Knode (2003), Ninth Dist. App. No. 03CA014. *Page 22 
 {¶ 90} Based on the evidence presented at trial, the jury had the opportunity to listen to the witnesses and judge their credibility. It is within their province to determine that the officers were more credible than Appellant and accordingly, we defer to the judgment of the jury and find their verdict was not against the manifest weight of the evidence. Moreover, we find that the verdict was supported by sufficient evidence.
 {¶ 91} Appellant's third and fourth assignments of error are overruled.
 V. {¶ 92} In his fifth assignment of error, Appellant argues he was denied the effective assistance of counsel. We disagree.
 {¶ 93} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to Appellant. The second prong is whether Appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 94} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id. *Page 23 
 {¶ 95} In order to warrant a reversal, Appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial; a trial whose result is reliable.Strickland 466 U.S. at 687; 694, 104 S.Ct. at 2064; 2068. The burden is upon the defendant to demonstrate that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome.Strickland, supra; Bradley, supra.
 {¶ 96} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 97} "`The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" State v.Fears (1999), 86 Ohio St.3d 329, 347, 715 N.E.2d 136, quoting State v.Holloway (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831.
 {¶ 98} Essentially, Appellant argues that both of his attorneys' failures to raise in the trial court the same issues and arguments that he presents in the above assignments of error on appeal rendered trial counsel's performance ineffective. Appellant offers no additional grounds not addressed in the previous assignments of error. *Page 24 
 {¶ 99} As we have found no grounds for reversal of his conviction in Appellant's first through fourth assignments of error, we obviously do not consider his counsel ineffective in this regard.
 {¶ 100} None of the instances raised by Appellant rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record Appellant cites in support of his claim that he was denied effective assistance of counsel, we find Appellant was not prejudiced by defense counsel's representation of him. The results of the trial were not unreliable, nor were the proceedings fundamentally unfair because of the performance of defense counsel.
 {¶ 101} Appellant's fifth assignment of error is overruled.
 {¶ 102} For the foregoing reasons, the judgment of the Court of Common Pleas of Guernsey County, Ohio, is affirmed.
 Wise, J., Gwin, P.J., and Delaney, J., concur. *Page 25 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Guernsey County, Ohio, is affirmed.
 Costs assessed to Appellant. *Page 1