[Cite as *State v. Quintero*, 2018-Ohio-5145.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 18AP-102 |
| v. | : | (C.P.C. No. 16CR-4823) |
| Tristan J. Quintero, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 20, 2018

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

**On brief:** *Sydow Leis LLC*, and *Megan E. Grant*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Tristan J. Quintero, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas pursuant to a plea of no contest after the trial court denied his motion to suppress. For the following reasons, we affirm.

## I. Factual and Procedural Background

{¶ 2} On September 2, 2016, a Franklin County Grand Jury indicted Quintero on one count of trafficking in heroin, in violation of R.C. 2925.03, a felony of the first degree; one count of possession of heroin, in violation of R.C. 2925.11, a felony of the first degree;

and count one aggravated possession of drugs, in violation of R.C. 2925.11, a felony of the second degree. Each count also contained a firearm specification pursuant to R.C. 2941.141(A). Quintero initially entered a plea of not guilty.

{¶ 3} On December 18, 2016, Quintero filed a motion to suppress evidence. He requested that all statements and evidence seized as a result of the search warrant executed at 499 Beechwood Road be suppressed. He argued that the search warrant was obtained in violation of the Fourth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution and that his statements were taken in violation of the Fifth Amendment to the United States Constitution. The state opposed the motion. On March 23, 2017, the trial court held a hearing on the motion to suppress.

{¶ 4} At the hearing, Sergeant Dennis Allen, the head of the narcotics unit for the city of Whitehall Division of Police, testified that the investigation of 499 Beechwood was initiated by Patrolman Gary Baker. Baker had responded to a call from a neighbor who thought the house was supposed to be vacant but saw people inside. Baker arrived at the address and encountered Quintero. Quintero told Baker that he was just moving in. According to Allen, Baker felt from Quintero's actions something shady was going on, so he paid attention to the residence. Baker informed Allen he noticed additional traffic at 499 Beechwood and recommended Allen look into it.

{¶ 5} On August 26, 2015, 499 Beechwood was included on a list of addresses to conduct a trash pull. Detective John Earl explained at the suppression hearing how a trash pull is conducted in general. An officer will drive to an addresses on the list and note if there is any trash at the curb. If there is, the officer will then look for a nearby trash truck. After making contact, the officer will ask the driver to collect trash from that address. The officer will have the driver compact the whole back end of the truck so that it is empty. The trash truck will then proceed to the address and collect the trash. The officer will watch the trash being picked up and follow the truck to a location away from the address. The officer then recovers the trash from the truck and takes it to the police department to be searched.

{¶ 6} Allen testified that on the morning of August 26, 2015, he drove to 499 Beechwood, saw a trash can on the curb, notified Earl, and sat on an adjacent street to watch the front of the residence. Earl testified he located a trash truck and asked the driver to collect the trash. He verified the driver compacted the back end of the truck and that it was

empty. Earl followed the truck to 499 Beechwood. Both Allen and Earl watched the trash being collected from 499 Beechwood. The truck then turned the corner onto Etna Road. Allen met the truck and recovered the trash from the truck and took it to the police department. Earl and Allen proceeded to search through the trash. They found a prescription and ointment box with the name True Quintero on them and a large envelope with the name Shirley Roberts on it. Allen testified that True is Quintero's daughter and Roberts is his mother-in-law. Several torn baggies with a powdery residue were also recovered. Allen conducted a field test on the residue, which tested positive for heroin.

{¶ 7}   Allen testified a second trash pull was conducted on September 2, 2015. He stated he personally observed trash in the same container from the August 26 trash pull sitting in the street near the curb. The same procedure was followed that day except that Allen conducted the trash pull and search by himself. He found more torn baggies with residue that tested positive for heroin. As a result of the second trash pull, Allen decided to request a search warrant. He prepared the affidavit and sent it to the municipal court duty judge. After the judge granted the search warrant, officers proceeded to 499 Beechwood to execute the warrant.

{¶ 8}   Detective Guy Grinstead testified police arrived at 499 Beechwood on September 2, 2015 at 12:42 p.m. to execute the search warrant. They waited for Quintero to arrive, immediately detained him, and placed him in handcuffs. While other officers went into the residence to clear the house, Grinstead waited with Quintero on the back patio. When he got the all clear, Grinstead stated that at 1:05 p.m. he went over the constitutional rights form with Quintero, who signed the acknowledgement at 1:08 p.m. According to Grinstead, after he advised Quintero of his rights, Quintero agreed to cooperate. Quintero then led the officers to where the drugs, firearms, and money were located in the house. Quintero continued to cooperate with the police after the search was completed. Through his attorney, Quintero informed Grinstead a week later he had received a large shipment of marijuana. Grinstead denied Quintero requested an attorney at any point and denied asking any questions regarding the drugs prior to reading Quintero his rights. He did confirm that he told Quintero that if Quintero cooperated it may help him later.

{¶ 9} Quintero presented two witnesses and his own testimony at the suppression hearing. Lisa Gillenwater and Nicolas Rosales were neighbors of Quintero when he resided at 499 Beechwood. They testified the property was quiet while Quintero lived there and they did not observe any increased traffic in the area. Rosales, however, did say the Quintero would set trash out sometimes but it was not all the time.

{¶ 10} Quintero testified he moved into 499 Beechwood at the end of June 2015. His lease for his prior address did not expire until December, so he did not set up trash service at 499 Beechwood. Quintero explained he would keep trash on the side of his garage. After it accumulated, he would take the trash in his truck and dump it at his former townhouse. He denied he set out any trash on August 26 or September 2, 2015. Quintero stated he did not call to set up trash service until October 2015.

{¶ 11} On September 2, 2015, Quintero went to get his wife a new cell phone. When he returned home, a van pulled into his driveway behind him. Officers exited the vehicle with their guns drawn and ordered him out of his car. Quintero said he immediately requested his attorney. He was handcuffed and had his phones and keys seized. He questioned why the officers were there and was told about the search warrant. According to Quintero, Grinstead began asking him what is in the house and saying they could make this whole thing go away if he cooperated. Quintero said he remained quiet except for asking for his attorney and to have his phones returned. Grinstead then showed Quintero the form with his constitutional rights on it. He asked Quintero if he was aware of his rights and Quintero said he was. Quintero acknowledged signing the form but stated he did not read it. He also denied Grinstead read the form to him.

{¶ 12} Quintero testified he began to get frustrated because the officers were denying him an attorney, refusing to give back his phones, and making false promises. At that point, he said he felt he did not have any other choice. From where he sat on the patio, he said he could see into the house and Allen was near the closet where the drugs were. Quintero began to give Grinstead information and eventually told the officers where they could find the drugs and firearms.

{¶ 13} At the suppression hearing, Quintero submitted several exhibits. He identified exhibit MH-N as an email he received from Nicole Rogue, a customer service supervisor for Local Waste Services. In the email, she stated Quintero started his account

on June 23, 2015. The account was prorated and billed but no payment was received. On August 31, 2015, the account went into suspension. It also referenced a screen shot that showed the account having an end date. When an end date is placed on the account, it is considered suspended and no longer on the route sheet for collection. Exhibit MH-O is the screen shot but does not show the whole page as it is cut off at the bottom. "End date" appears for the dates October 14, 2015 and January 2, 2016. Under the text column, it says "JW From08/31/2015 to" and "JW from Overdue Accounts." Exhibit MH-Q is a past due reminder notice from Local Waste Services. It is addressed to Investments Laurel, Quintero's landlord at 499 Beechwood. It states there is an outstanding balance and that services would be suspended if the account remains unpaid after August 31, 2015. Quintero testified Exhibit MH-R is another email from Nicole Rogue. This one states "499 Beechwood was suspended from 8/31/2015 and was reactivated for services on 10/14/2015. This * * * time frame Local Waste Services did not remove refuse from this property."

{¶ 14} The trial court denied the motion to suppress. It determined the affidavit was sufficient on its face and addressed each of the essential statutory elements. The trial court also held the affidavit did not contain any deliberate or recklessly false statements. It found the credible, first-hand testimony of the officers established the officers observed a trash can placed at the curb in front of 499 Beechwood Road on August 26, 2015 and September 2, 2015, and the officers observed the trash being collected from the can under controlled conditions. The trial court also rejected Quintero's arguments that he was interrogated in violation of his Fifth Amendment rights on September 2, 2015. The trial court found Quintero's testimony was not credible under the totality of the circumstances. The trial court noted the objective evidence presented at the hearing established Quintero was read his rights, he signed an acknowledgement of those rights, and he voluntarily waived them and elected to cooperate with the officers.

{¶ 15} On May 16, 2017, Quintero filed a motion to reconsider the suppression of evidence. He contended the trial court failed to fully consider the issues presented at the hearing. Quintero specifically challenged the affidavit established a nexus between the evidence collected from the trash pull and any alleged criminal activity inside the residence. He also contested the trial court's determination that the affidavit did not contain any false

or misleading statements.  He alleged statements in the affidavit were not consistent with the evidence produced at the hearing.  Also, he claimed the trial court committed error in its summary of the testimony of defense witnesses and did not fully consider the evidence produced from the trash removal company.  The trial court denied the motion.

{¶ 16} Two months later, defense counsel filed a motion to withdraw.  He indicated Quintero did not wish to proceed with him as counsel.  The attorney alleged that Quintero was refusing to follow his advice and cooperate with him.  Quintero had also failed to pay a trial retainer.  The trial court granted the motion to withdraw and appointed the public defender to represent Quintero after an affidavit of indigency was filed.  At the end of November 2017, Quintero informed the court he had arguments with the public defender and he was not comfortable with her representing him.  The trial court issued an entry relieving the public defender of any further representation and appointed a new attorney to represent Quintero.

{¶ 17} On January 3, 2018, Quintero withdrew his plea of not guilty and entered a plea of no contest to the indictment.  The trial court proceeded to sentencing.  It merged the trafficking and possession of heroin counts and merged the firearm specifications.  The trial court imposed a five-year prison term for trafficking heroin and a consecutive, one-year term for the firearm specification.  It also imposed a concurrent, four-year term for aggravated possession of drugs, for a total sentence of six years.

## II.  The Appeal

{¶ 18} Quintero appeals and raises the following assignments of error:

> [I.]  The trial court erred when it denied defendant's motion to suppress.

> [II.] Appellant was denied his Sixth Amendment right to effective assistance of counsel when counsel failed to present mitigation at sentencing.

## III.  First Assignment of Error—Motion to Suppress

{¶ 19} In the first assignment of error, Quintero challenges the trial court's denial of his motion to suppress.  The denial of a motion to suppress involves a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  When ruling on a motion to suppress, the trial court assumes the role of trier of fact, and therefore is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v.*

*Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, ¶ 12. However, this court determines as a matter of law, without deferring to the trial court's conclusions, whether these facts meet the applicable legal standard. *Burnside* at ¶ 8.

{¶ 20} There are three types of challenges to a trial court's decision on a motion to suppress on appeal. "First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress." *State v. Bates*, 5th Dist. No. 08 CA 15, 2009-Ohio-275, ¶ 24. In this case, Quintero argues the trial court's factual findings were erroneous. When reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are supported by the evidence under the totality of the circumstances. *See State v. Fanning*, 1 Ohio St.3d 19, 20 (1982).

## A. Search of Residence

{¶ 21} In his motion to suppress, Quintero argued the affidavit in support of the search warrant was not supported by probable cause because it did not establish a nexus between the police officer's observations and the place to be searched, and it contained false statements that were deliberately or recklessly made.

{¶ 22} The Fourth Amendment to the United States Constitution specifies that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article I, Section 14 of the Ohio Constitution contains nearly identical language and provides the same protection as the Fourth Amendment. *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 16, citing *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, ¶ 12.

{¶ 23} For a search warrant to issue, "the evidence must be sufficient for the magistrate to conclude that there is a fair probability that evidence of a crime will be found in a particular place. The reviewing court must then ensure that the magistrate had a substantial basis for concluding that probable cause existed." *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 35. Trial and appellate courts should accord great deference to

the magistrate's determination that the affidavit in support of the search establishes probable cause and may not substitute their own judgment for that of the magistrate. *State v. George*, 45 Ohio St.3d 325 (1989), paragraph two of the syllabus. Doubtful or marginal cases should be resolved in favor of upholding the warrant. *Id.*

{¶ 24} If the affidavit contains false or misleading information, however, no deference is owed to the issuing magistrate. "To successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either 'intentionally, or with reckless disregard to the truth.' " *State v. Waddy*, 63 Ohio St.3d 424, 441 (1992), citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

{¶ 25} The trial court found that the officers' testimony at the suppression hearing was credible. Based on the testimony of Earl and Allen, the trial court found that the officers observed a trash can placed at the curb in front of Quintero's residence at 499 Beechwood on August 26, 2015 and September 2, 2015 and that the trash was collected under controlled conditions. The evidence from the trash pull on August 26 included a prescription and an ointment box with the name True Quintero on them, an envelope with the name Shirley Roberts on it, and several torn baggies with residue that field-tested positive for heroin. The September 2 trash pull contained additional torn baggies with residue that also field-tested positive for heroin. As a result of these findings, the trial court concluded the affidavit established a sufficient nexus with illegal activity inside the residence at 499 Beechwood and the affidavit did not contain any false or misleading statements.

{¶ 26} On appeal, Quintero contends the trial court ignored his evidence of emails and reports from the trash company that he was not receiving collection services on the dates of the trash pulls. Because the trial court chose to believe the testimony of the officers over his own testimony and the business records of an uninterested party, the findings of fact are erroneous and prejudicial.

{¶ 27} It is fundamental the weight of the evidence and credibility of witnesses are primarily for the trier of facts. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. This principle is applicable to suppression hearings as well as trials. *Fanning* at 20. The trial judge, having heard the witnesses testify, was in a far better

position to evaluate their testimony and credibility than an appellate court. There is substantial evidence in the record upon which the trial court could base its findings of fact. Earl and Allen testified they saw trash outside 499 Beechwood on August 26. The records from the trash company indicate Quintero set up service on June 23, 2015 and his account was not suspended until August 31, 2015, after the August 26 trash pull. From the August 26 trash pull, the officers recovered evidence that was linked to Quintero's family members. Although the trash company may have suspended Quintero's account on August 31, 2015, this does not unequivocally show that trash was not put out on September 2, 2015. Allen testified he observed a trash container on the street that day. One of Quintero's neighbors testified he observed on occasion trash being set out in front of 499 Beechwood. Despite Quintero's denials, we conclude the trial court's findings of fact are not contrary to the evidence.

### B. Quintero's Statements

{¶ 28} Quintero also contends the trial court erred in denying his motion to suppress his statements. He asserts his statements were not voluntary and he was questioned prior to receiving his *Miranda* warnings. He further alleges the officers ignored his request for counsel. According to Quintero, he asked for an attorney within 30 seconds of getting out of his vehicle and then repeatedly requested one for the next one-half hour.

{¶ 29} Under the Fifth Amendment to the United States Constitution, no person shall be compelled to be a witness against himself or herself. To safeguard this right, a suspect in police custody " 'must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.' " *State v. Lather*, 110 Ohio St.3d 270, 2006-Ohio-4477, ¶ 6, quoting *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). "If a suspect requests counsel, all interrogation must cease until an attorney is present or the suspect himself initiates communication." *State v. Curtis*, 10th Dist. No. 05AP-795, 2006-Ohio-4230, ¶ 13, citing *Edwards v. Arizona*, 451 U.S. 477, 481 (1981).

{¶ 30} Whether there is a valid waiver of *Miranda* rights involves a dual inquiry. " 'First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.

Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' " *Lather* at ¶ 7, quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

{¶ 31} The burden is on the prosecution to prove appellant made a knowing, intelligent, and voluntary waiver of constitutional rights. *State v. Drew*, 10th Dist. No. 07AP-467, 2008-Ohio-2797, ¶ 72. Whether a suspect voluntarily waives his *Miranda* rights is based on the totality of the circumstances. *State v. Clark*, 38 Ohio St.3d 252, 261 (1988). The totality of the circumstances includes "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Dixon*, 101 Ohio St.3d 328, 2004-Ohio-1585, ¶ 25, citing *State v. Eley*, 77 Ohio St.3d 174, 178 (1996). "Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Lather* at ¶ 7, citing *Moran* at 421.

{¶ 32} The voluntariness of a statement is a separate and distinct issue from whether a defendant validly waived his *Miranda* rights. *State v. Eal*, 10th Dist. No. 11AP-460, 2012-Ohio-1373, ¶ 36. A defendant's statement to the police is considered voluntary absent evidence of coercive police conduct. *Colorado v. Spring*, 479 U.S. 564, 574 (1987). The critical question is whether the defendant's will to resist was overborne by coercive police conduct to produce a confession not freely self-determined. *State v. Dailey*, 53 Ohio St.3d 88 (1990), paragraph two of the syllabus. A police officer's assurances that a defendant's cooperation will be considered, or that a statement will be helpful, do not invalidate an otherwise legal confession. *State v. Stringham*, 2d Dist. No. 2002-CA-9, 2003-Ohio-1100, ¶ 16. "[A] mere suggestion that cooperation may result in more lenient treatment is neither misleading nor unduly coercive, as people 'convicted of criminal offenses generally are dealt with more leniently when they have cooperated with the authorities.' " *Id.*, quoting *State v. Farley*, 2d Dist. No. 2002-CA-2, 2002-Ohio-6192, ¶ 44. Although whether an individual knowingly, voluntarily, and intelligently waived his *Miranda* rights and whether the individual made a statement voluntarily are separate issues, the same totality-of-circumstances test applies to both. *Eley* at 178, citing *Clark* at 261.

{¶ 33} Here, after reviewing the totality of the evidence, we agree with the trial court that Quintero understood and waived his rights and he voluntarily spoke to Grinstead. " 'Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent.' " *State v. Valentine*, 10th Dist. No. 14AP-893, 2016-Ohio-277, ¶ 17, quoting *Berghuis v. Thompkins*, 560 U.S. 370 (2010). Grinstead testified that he read Quintero his *Miranda* rights and went over the constitutional rights form. Quintero confirmed Grinstead presented him with the form and he stated he was aware of his rights. He also signed the acknowledgement that he had read and been read the statement of his rights.

{¶ 34} Quintero, however, claims he repeatedly asked for his attorney and asked for his phones so that he could call his attorney. Grinstead denies this occurred. According to Grinstead, Quintero agreed to cooperate after signing the form and continued to provide information after September 2. Quintero does not claim there was any coercion, intimidation, or deception. Instead, he testified he believed Grinstead was lying to him and making false promises. There is no indication that Quintero's will was overborne. The trial court found Grinstead's testimony was credible but Quintero's was not. Again, the trial court's factual decision at a suppression hearing, which rests upon the credibility of witness testimony, is accorded great deference on appellate review. *State v. Robinson*, 9th Dist. No. 16766 (Jan. 11, 1995); *see also State v. Smith*, 61 Ohio St.3d 284, 288 (1991). We conclude the evidence in the record supports the trial court's findings and that Quintero waived his rights and voluntarily gave statements.

{¶ 35} Accordingly, we find Quintero has not established the trial court erred in denying his motion to suppress. We overrule the first assignment of error.

## IV. Second Assignment of Error—Ineffective Assistance of Counsel

{¶ 36} In the second assignment of error, Quintero alleges his counsel did not provide effective assistance of counsel when he failed to present mitigation at sentencing. He argues his counsel was ineffective because counsel did not prepare a sentencing memo or adequately prepare an argument at sentencing, counsel immediately proceeded to sentencing, and counsel did not do research into Quintero's history or personal circumstances other than review Quintero's prior record.

{¶ 37} The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. *State v. Banks*, 10th Dist. No. 10AP-1065, 2011-Ohio-2749, ¶ 12, citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In order to prevail on an ineffective assistance of counsel claim, a defendant must prove (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and that the errors were so serious as to deprive the defendant of a fair proceeding. *State v. Canada*, 10th Dist. No. 14AP-523, 2015-Ohio-2167, ¶ 89. A failure to demonstrate either a performance error on trial counsel's part or the requisite level of prejudice is fatal to defendant's claim of ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000), citing *Strickland* at 687.

{¶ 38} A properly licensed attorney in Ohio is presumed competent. *Banks* at ¶ 13, citing *State v. Lott*, 51 Ohio St.3d 160, 174 (1990). The burden of proving ineffective assistance of counsel is on the defendant. *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). Trial counsel is entitled to a strong presumption his or her performance was adequate and the attorney's action constituted sound trial strategy. To demonstrate prejudice, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.

{¶ 39} When Quintero was sentenced, he was being represented by his fourth attorney on the case. Quintero terminated the first two attorneys he had retained. After Quintero filed an affidavit of indigency, the trial court appointed the public defender to the case. In November 2017, Quintero informed the trial court he was no longer comfortable being represented by the public defender. The trial court appointed private counsel to represent him. A little over one month later, Quintero changed his plea to no contest, and the trial court sentenced him.

{¶ 40} At the plea portion of the January 3, 2018 hearing, the trial court asked defense counsel if he was adequately up to speed on the case and if he had satisfied his professional obligations to Quintero. Defense counsel responded affirmatively. Upon the

trial court's inquiry, Quintero stated he was completely satisfied with his attorney. During sentencing, defense counsel asked the trial court to take into consideration that Quintero was facing mandatory time. He noted Quintero's prior record was a single conviction for disorderly conduct. Defense counsel also informed the court Quintero had lost his job as a result of these proceedings, he was indigent, he was trying to take care of his family, and he recently experienced a death in the family.

{¶ 41} We decline to find defense counsel's performance was deficient. Although his statement in mitigation was brief, the presentation of mitigating evidence is a matter of trial strategy. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 241. In general, trial tactics and strategies do not constitute a denial of effective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45 (1980).

{¶ 42} Even if counsel's performance at sentencing could be considered deficient, Quintero has not demonstrated he was prejudiced as a result. *State v. Hayes*, 10th Dist. No. 08AP-233, 2009-Ohio-1100, ¶ 31. He failed to identify what the mitigation evidence would have been. He also fails to show how mitigating evidence would have resulted in a lesser sentence. The firearm specification required a one-year prison term. R.C. 2929.14(B)(1)(a)(iii). Quintero also faced a sentence of 3 to 11 years for trafficking heroin and a sentence of 2 to 8 years for aggravated possession of drugs. He received a prison term of 5 and 4 years respectively. We are unwilling to speculate the outcome of sentencing would have been different. Accordingly, we find Quintero has failed to establish he received ineffective assistance of counsel. We overrule the second assignment of error.

{¶ 43} For the foregoing reasons, Quintero's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and SADLER, JJ., concur.

_____