[Cite as *State v. Green*, 2022-Ohio-101.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-03-009 |
| | : | O P I N I O N |
| - vs - | | 1/18/2022 |
| | : | |
| CODY D. GREEN, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20200123

Jess C. Weade, Fayette County Prosecuting Attorney, and Sean M. Abbott, Assistant Prosecuting Attorney, for appellee.

Yavitch & Palmer, Co. L.P.A., and Stephen E. Palmer, for appellant.

**S. POWELL, J.**

{¶ 1} Appellant, Cody D. Green, appeals his conviction in the Fayette County Court of Common Pleas after a jury found him guilty of first-degree felony rape. For the reasons outlined below, we reverse the trial court's decision, vacate Green's conviction, and remand this matter to the trial court for further proceedings consistent with this opinion.

{¶ 2} On June 19, 2020, the Fayette County Grand Jury returned an indictment charging Green with one count of rape in violation of R.C. 2907.02(A)(2), a first-degree felony in accordance with R.C. 2907.02(B).  The charge arose after it was alleged Green waived his *Miranda* rights and made incriminating statements to police admitting to forcibly raping the purported victim, L.F., on the evening of May 12, 2020 while in Fayette County, Ohio.  After denying Green's motion to suppress the incriminating statements he made to police, the matter proceeded to a two-day jury trial held on February 23 and 24, 2021. During trial, the jury heard testimony from several witnesses.  This includes testimony from the alleged victim, L.F.

{¶ 3} After both parties rested, and following deliberations, the jury returned a verdict finding Green guilty as charged.  Two days later, on February 26, 2021, the trial court held a sentencing hearing and sentenced Green to an indefinite term of a minimum 8 years in prison to a maximum potential term of 12 years in prison.  The trial court also classified Green as a Tier III sex offender and notified Green that he would be placed on a mandatory five-year postrelease control term upon his release from prison.  Green now appeals his conviction, raising five assignments of error for review.

{¶ 4} Assignment of Error No. 1:

{¶ 5} THE TRIAL COURT IMPROPERLY DENIED APPELLANT'S MOTION TO SUPPRESS HIS STATEMENTS, AS HIS MIRANDA WAIVER WAS NOT MADE KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY IN VIOLATION OF DUE PROCESS OF LAW, MIRANDA V. ARIZONA, THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶ 6} In his first assignment of error, Green argues the trial court erred by denying his motion to suppress the incriminating statements he made to police because the waiver

of his *Miranda* rights was not knowingly, intelligently, and voluntarily entered.

{¶ 7} "Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact." *State v. Turner*, 163 Ohio St.3d 421, 2020-Ohio-6773, ¶ 14, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. "Therefore, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Leder*, 12th Dist. Clermont No. CA2018-10-072, 2019-Ohio-2866, ¶ 17, citing *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12; *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 14 ("the appellate court must decide the legal questions independently, without deference to the trial court's decision").

{¶ 8} "When a suspect is questioned in a custodial setting," such as Green was here, "the Fifth Amendment requires that he receive *Miranda* warnings to protect against compelled self-incrimination." *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, ¶ 34. "The legal standards applied to *Miranda* warnings are well known." *State v. Lewis*, 2d Dist. Montgomery No. 28881, 2021-Ohio-1837, ¶ 16. "A suspect in police custody 'must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any

questioning if he so desires.'" *State v. Lather*, 110 Ohio St.3d 270, 2006-Ohio-4477, ¶ 6, quoting *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602 (1966).

{¶ 9} "Under the exclusionary rule, failure to give *Miranda* warnings can result in the suppression of the suspect's answers to questioning." *State v. Gaston*, 6th Dist. Lucas No. L-06-1183, 2008-Ohio-1856, ¶ 37. "Of course, one may waive or relinquish a known right." *State v. Valentine*, 10th Dist. Franklin No. 14AP-893, 2016-Ohio-277, ¶ 10. To be effective, however, a suspect's waiver of his or her *Miranda* rights must be knowingly, intelligently, and voluntarily entered. *State v. Linnik*, 12th Dist. Madison No. CA2004-06-015, 2006-Ohio-880, ¶ 11, citing *Edwards v. Arizona*, 451 U.S. 477, 483, 101 S.Ct. 1880 (1981). "Whether there is a valid waiver of *Miranda* rights involves a dual inquiry." *State v. Quintero*, 10th Dist. Franklin No. 18AP-102, 2018-Ohio-5145, ¶ 30; *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, ¶ 187 (noting that there are "two aspects of waiver" when analyzing a suspect's waiver of his or her *Miranda* rights). In the context of *Miranda*, the United States Supreme Court has explained this dual inquiry as follows.

{¶ 10} "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135 (1986). The Ohio Supreme Court has also recognized that "to meet the first aspect of a voluntary waiver, the waiver must be noncoercive." *Lather*, 2006-Ohio-4477 at ¶ 8. The same holds true as it relates to this court. *See State v. A.P.*, 12th Dist. Warren No. CA2018-01-006, 2018-Ohio-3423, ¶ 28 ("[o]ne may waive or relinquish a known right if relinquishment of the right was voluntary" and not the product of "intimidation, coercion, or deception"), citing *Lather* at ¶ 7. Therefore, as stated by the Ohio Supreme Court, "[a] suspect's decision to waive his Fifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically

- 4 -

impaired because of coercive police conduct." *State v. Dailey*, 53 Ohio St.3d 88 (1990), paragraph two of the syllabus. This means a suspect's waiver of his or her *Miranda* rights "is not involuntary *unless* there is evidence of police coercion, such as physical abuse, threats, or deprivation of food, medical treatment, or sleep." (Emphasis sic.). *Wesson*, 2013-Ohio-4575 at ¶ 35, citing *State v. Cooey*, 46 Ohio St.3d 20, 28 (1989).

{¶ 11} "Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Burbine*, 475 U.S. at 421. Thus, only if the totality of the circumstances reveals both an uncoerced choice and a requisite level of comprehension may the trial court properly conclude that the suspect has effectively waived his or her *Miranda* rights. *State v. Henderson*, 5th Dist. Stark No. 2008 CA 00245, 2009-Ohio-4157, ¶ 22. That is to say, when evaluating a suspect's waiver of his or her *Miranda* rights, a trial court may recognize the validity of a suspect's waiver only if the trial court finds (1) the relinquishment of the suspect's *Miranda* rights was voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception; and (2) the suspect was fully aware of the nature of the rights he or she was abandoning and the consequences of his or her decision to abandon those rights. *State v. Chester*, 10th Dist. Franklin No. 08AP-1, 2008-Ohio-6679, ¶ 20. "Factors to consider when evaluating the totality of the circumstances include 'the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" *State v. Penn*, 6th Dist. Fulton No. F-20-004, 2021-Ohio-1761, ¶ 27, quoting *State v. Dixon*, 101 Ohio St.3d 328, 2004-Ohio-1585, ¶ 25.

{¶ 12} In its decision, the trial court found Green's waiver of his *Miranda* rights satisfied the first aspect of waiver, voluntariness. The trial court reached this decision upon

finding there was no evidence presented at the suppression hearing establishing "coercion or misconduct," or "unreasonable or constitutionally infirm conduct," by the officers who conducted Green's custodial interrogation. The trial court, however, made no finding as it relates to the second aspect of waiver. That is, whether Green's waiver of his *Miranda* rights was knowingly and intelligently entered as having been made with a full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them.

{¶ 13} Therefore, because the trial court only determined Green's waiver of his *Miranda* rights was made voluntarily without also determining whether Green's waiver was knowingly and intelligently entered, the trial court's decision overruling Green's motion to suppress is reversed, Green's conviction is vacated, and this matter is remanded to the trial court for further proceedings consistent with this opinion. Upon remand, the trial court shall issue a decision on Green's motion to suppress that addresses both (1) whether Green's waiver of his *Miranda* rights was made voluntarily, and (2) whether Green's waiver of his *Miranda* rights was knowingly and intelligently entered. Accordingly, for the reasons outlined above, Green's first assignment of error has merit and is sustained.

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE TRIAL COURT IMPROPERLY DENIED APPELLANT'S REQUEST FOR STATE FUNDS FOR A FORENSIC COMPETENCY EVALUATION, THEREBY DEPRIVING HIM OF A FAIR TRIAL IN VIOLATION OF EQUAL PROTECTION AND DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶ 16} Assignment of Error No. 3:

{¶ 17} THE TRIAL COURT IMPROPERLY EXCLUDED EXCULPATORY

TESTIMONY OF A DEFENSE WITNESS REGARDING THE ALLEGED VICTIM'S OPPORTUNITY AND PLAN TO FABRICATE A RAPE ALLEGATION. THE COURT THEREBY DEPRIVED APPELLANT OF HIS RIGHTS TO COMPULSORY PROCESS, CONFRONTATION, AND TO PRESENT A MEANINGFUL DEFENSE IN VIOLATION OF THE SIXTH AMENDMENT, DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶ 18} Assignment of Error No. 4:

{¶ 19} THE TRIAL COURT ERRED AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION BY OVERRULING APPELLANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL, AS THE STATE FAILED TO OFFER SUFFICIENT EVIDENCE TO PROVE EACH AND EVERY ELEMENT OF THE CHARGES BEYOND A REASONABLE DOUBT.

{¶ 20} Assignment of Error No. 5:

{¶ 21} APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF DUE PROCESS OF LAW AS GUARANTEED BY FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶ 22} In his second, third, fourth, and fifth assignments of error, Green raises a variety of other issues related to his conviction. This includes a question as to whether the trial court erred by denying Green's motion for an appropriation of funds to obtain an expert who could evaluate his "cognitive abilities in the context of a *Miranda* waiver." This also includes a challenge to the sufficiency of the evidence and the manifest weight of the

evidence the state offered in support of Green's conviction.

{¶ 23} However, given our decision as it relates to Green's first assignment of error addressed more fully above, Green's second, third, fourth, and fifth assignments of error need not be addressed as those four assignments of error have all been rendered moot. To hold otherwise would result in this court issuing what would essentially be an improper advisory opinion. It is well-settled precedent that both the Ohio Supreme Court, and this court, will not indulge in advisory opinions. *See State ex rel. White v. Koch*, 96 Ohio St.3d 395, 2002-Ohio-4848, ¶ 18 (noting the "well-settled precedent that we will not indulge in advisory opinions"); *State v. Perry*, 12th Dist. Preble No. CA2017-01-002, 2017-Ohio-7214, ¶ 14 ("we decline to issue what would essentially be an improper advisory opinion").

{¶ 24} Judgement reversed and remanded.

M. POWELL, J., concurs.

PIPER, P.J., concurs in judgment only.

**PIPER, P.J., concurring in judgment only.**

{¶ 25} I concur with the judgment entry of our majority opinion. While the trial court found Green's statement was voluntarily given to the detectives, it failed to address whether Green's "waiver was made with full awareness" and therefore given knowingly with comprehension of the consequences. *State v. Lather*, 110 Ohio St.3d 270, ¶ 8 (2006). After waiving one's rights, merely providing the statement voluntarily "does not answer whether the suspect knowingly, voluntarily, and intelligently waived his *Miranda* rights before making that statement * * *." *State v. Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708 ¶ 26.

{¶ 26} Unfortunately, the state conflated the issues when it opposed the motion to suppress arguing the only issue is "whether law enforcement engaged in coercion or

misconduct."  Yet constitutional jurisprudence has established that *Miranda* procedural safeguards were instituted due to the inherent intimidation and duress associated, not with specific law enforcement conduct, but with the very nature of custodial interrogation itself. *Id.* at ¶ 21-22.  The pressure of custodial interrogation wherein there is the abandonment of rights must be done with an understanding of the rights and a comprehension of the consequences*.  Id.*  "The waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the *totality of the circumstances* reveals * * * the requisite level of comprehension may a court properly conclude that *Miranda* rights have been waived*."  Lather* at ¶ 7 (Emphasis added), citing *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135.

{¶ 27} I only write separately because, in my opinion, our resolution of the first assignment of error is not separate or distinct from resolution of the second and third assignments of error.  The second assignment of error challenges the trial court's denial of funds for expert assistance in evaluating Green's ability to understand his rights, and his comprehension of the consequences in giving up those rights.  Although Green's request was directly aimed at the motion to suppress, the trial court correctly noted information received from such expert assistance may also be useable at trial.  The third assignment of error challenges the exclusion of relevant testimony which went to the heart of Green's claim of innocence.

## I.  Second Assignment of Error Inextricably Entwined

{¶ 28} An understanding of one's rights with an appreciation of the consequences in waiving them can be inferred; it need not be express.  *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, ¶ 188.  However, such an inference is only properly made after considering *all* the circumstances.  When the suspect is a juvenile, the totality of the circumstances includes the age, experience, education, background, and intelligence, as

- 9 -

well as the person's capacity to understand the *Miranda* warnings given, the nature of Fifth Amendment rights, and the consequences of waiving those rights. *Barker*, 2016-Ohio-2708 at ¶ 24.

{¶ 29} The record clearly documents there is little difference between Green and a juvenile. As early as the arraignment, Green's counsel informed the court his client had "cognitive issues," had been receiving psychological treatment for years, and there was a need for expert evaluation. In Green's motion for expert evaluation, counsel revealed that Green has an IQ of 65. Counsel represented he needed an expert to evaluate, and potentially testify, as to Green's "inability to intelligently and knowingly waive his *Miranda* rights." It is common knowledge that a person with an IQ below 70 is considered to have MR (formerly mental retardation), which is now referred to as having ID (intellectual disability).[1]

{¶ 30} Legal practitioners regularly involved in criminal proceedings are aware that an IQ below 70 is a strong indicator that an individual may have an intellectual disability. *See Atkins v. Virginia*, 536 U.S. 304, 309 at fn. 5, 122 S.Ct. 2242 (2002) ("[A]n IQ between 70 and 75 or lower * * * is typically considered the cutoff IQ score for the intellectual function prong of the mental retardation definition."). A defendant's mental condition is a critical aspect of the "totality of the circumstances" that the trial court is required to consider for waiver of the defendant's *Miranda* rights. *Ford* at ¶ 194. A consideration of "mentality" is built into the required analysis. *Id.*

{¶ 31} The state's misunderstanding of the motion to suppress was compounded at trial. Before commencement of the trial, the state convinced the trial court that testimony regarding Green's comprehension and his willingness to appease during his interview was

---

1. It is nevertheless true that "[i]ntellectual disability is a condition, not a number." *Hall v. Florida*, 572 U.S. 701, 723, 134 S.Ct. 1986 (2014). Yet, an IQ test score "is of considerable significance" in determining whether an individual has an intellectual disability. *Id.*

not admissible at trial.  The trial court ruled: "in regard to testimony about confidence (*sic*, likely "competence") to understand *Miranda* and/or involuntariness and coercion.  Those questions will not be permitted on cross-examination * * *.  Those particular issues were determined by the court in the motion to suppress, which was overruled and preserved for appellate purpose."  Critically, however, without the ability to develop the "totality of the circumstances" using expert assistance, those issues were not fully determined at the motion to suppress.

### A.  Opposition to Defense Receiving Expert Assistance

{¶ 32} In opposing the defense's request for funds to obtain expert assistance, the state argued to the trial court the defense could file a suggestion of incompetency to stand trial.  However, this argument misunderstands the issues and misdirects the trial court's focus.[2]  On appeal, the state again conflates the issues, arguing Green cannot show prejudice at the motion to suppress because Green could have asserted his incompetence to stand trial.  But Green's incompetency to stand trial is separate and distinct from whether Green's intellectual disability prevented him from comprehending his waiver of *Miranda* rights; both issues are subject to different standards and legal analyses.[3]

{¶ 33} The state incorrectly urged the trial court to rely upon *State v Hughbanks*, 99 Ohio St.3d 365, 2003-Ohio-4121, which it did in reaching its decision.  Yet, that case involved an adult who no longer took medicine nor received treatment for a condition that existed years ago.  *Id.* at ¶ 56.  Requesting expert assistance due to current cognitive

---

2.  Defense counsel attempted to establish at the motion to suppress that Green was not competent to understand his rights and the consequence of waiving such rights.  Defense counsel's position was not that his client was incompetent to stand trial.

3.  Incompetency to stand trial places the burden upon the defendant to prove his or her incompetence by a preponderance of the evidence.  *State v. Laghaoui*, 12th Dist. Warren No. CA2017-06-098, 2018-Ohio-2261, ¶ 14.  Conversely, the burden is upon the state to prove a knowing, intelligent, and voluntary waiver of *Miranda* by a preponderance of the evidence.  *State v. Gomez*, 12th Dist. Butler No. CA2017-03-035, 2017-Ohio-8681, ¶ 24.

disfunction, as in Green's circumstances, is a world apart from a claim of ineffective assistance of counsel for not raising issues when the defendant did not appear to suffer any mental illness, as in Hughbanks' circumstances.

{¶ 34} Furthermore, the argument made in *Hughbanks* was that Hughbanks' statement was not voluntarily given to the police. *Id.* at ¶ 50. Such an argument goes to the first prong of *Lather*, not the second prong. Green's request was premised on the second prong, not the first prong as in *Hughbanks*. In our current matter, the state was unaware that *Miranda* involves two distinct issues: the statement must have been voluntarily given but only after understanding the rights with a knowing waiver (which requires some level of comprehension). With the state's misunderstanding of *Miranda*, it is not surprising the trial court concluded the motion to suppress did not involve Green's state of mind, and only involved issues of coercion or misconduct on the part of the police. For those reasons, reliance on *Hughbanks* was misplaced.

{¶ 35} On appeal the state argues a low intellect does not necessarily render a person incapable of waiving *Miranda* rights. While such an isolated statement is accurate, it belies the fact that defense counsel was prevented from developing the effects of Green's intellectual disability without expert assistance. Such argument also attempts to prevent an analysis which would need to include the effects of low intellect on such things as memory, comprehension, and appeasement under pressure.

## B. Evidence of Particularized Need to Aid Defense

{¶ 36} The state opposed Green's counsel securing funds for expert assistance. However, with such assistance, a qualified expert would do tests, conduct interviews, and spend the necessary time to access and interact with Green for a comprehensive evaluation. An expert would identify and discuss Green's intellect and his diagnosis. Without funds for expert assistance, Green's counsel was resourceful and secured

testimony from Dr. Wolfe, a licensed psychologist, who worked at Scioto Paint Valley Mental Health. However, her testimony was somewhat limited as the state pointed out in its cross-examination. Dr. Wolfe's testimony apparently was discounted by the trial court.

{¶ 37} Ironically, while the state opposed defense counsel's request to receive funds to present a qualified expert, it also scrutinized Dr. Wolfe's credentials, criticized her because she had never testified in a criminal case, emphasized she had not performed her own tests, pointed out she reviewed a limited number of records, such as Green's IEPs (Individualized Education Plans), and insinuated her credibility was questionable due to her limited time directly interacting with Green. If Green had necessary funds for an expert, much of the state's challenge to Dr. Wolfe's testimony would not have been possible.

{¶ 38} The state's cross-examination indirectly pointed out that because Green had no funds for expert assistance, Green's counsel was restricted in developing relevant testimony and the credibility of that testimony. The state argues Green did not receive an unfair trial due to the lack of expert assistance because Green could have asserted that he was incompetent to stand trial. As addressed earlier, such reasoning fails.

{¶ 39} At trial, counsel attempted to elicit testimony from Green's mother as to her son's limited educational level and his diagnosis. This testimony was prohibited because she was not a doctor. To this day we do not know what his psychological diagnosis was. Again, a retained expert would have been able to aid a jury in understanding what an IQ of 65 meant and how his condition possibly effected his interactions and responses. Green's memory retention problems became important because he was accused of lying for mis-reporting factual circumstances. Additionally, Green's mother attempted to discuss how her son can be easily pressured into compliance. However, without an expert to substantiate her observations, her testimony would have little credibility. Not surprisingly, the state characterized this aspect of mother's testimony as being incredulous in its closing

argument.

## C. Conclusion

{¶ 40} In denying defense counsel's request for funds for expert assistance, the trial court determined there was no showing of a particularized need. However, there was a need to develop the totality of the circumstances and the court's bare conclusion was not supported by competent, credible evidence. Further, the court found an expert would not have aided the defense at trial. However, with the circumstances at hand, such a request was warranted, and the failure to grant such a motion was unreasonable. Consideration of the totality of the circumstances is necessary to resolve the first assignment of error. The totality of the circumstances became unavailable to the trial court without defense counsel's use of an expert. The two assignments of error are entwined and inseparable. Accordingly, we should reverse on the second assignment of error simultaneously with the first.

## II. Third Assignment of Error Not Moot

{¶ 41} When an error is subject to repetition between the same parties in the same proceedings it is not moot. *State ex rel. Cincinnati Enquirer v. Heath*, 121 Ohio St.3d 165, 2009-Ohio-590, ¶ 11 (reversing this court for incorrectly determining an issue to be moot). Here, the issue as to the admissibility of certain testimony will undoubtedly be repeated. Defense counsel would be ineffective if no attempt was made to elicit the same testimony from Green's mother.[4] Therefore, it is appropriate to visit the trial court's ruling to exclude relevant evidence when the same error could be made in future proceedings between the

---

4. As explained by the Ohio Supreme Court, this exception "applies only in exceptional circumstances in which the following two factors are both present: (1) the challenged action is too short in its duration to be fully litigated before its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *State ex rel. Calvary v. Upper Arlington*, 89 Ohio St.3d 229, 231 (2000*). E.g., State ex rel. Cincinnati Enquirer* at ¶ 11-14. Both factors are present here. The testimony presented—and objected to—was short in duration and the ruling mid-trial will be incapable of review before its exclusion. Furthermore, there is a reasonable likelihood that Green will be subject to the same action again. Requiring a proper analysis of Evid. R. 403(A) when excluding relevant evidence ensures Green fairness upon a retrial.

same parties without the possibility of review in those proceedings. *Id.*

{¶ 42} Defense counsel presented testimony from Green's mother concerning previous statements she heard from the victim who indicated the possibility of reporting false rape allegations. Without going into the details, the testimony would also provide an explanation for the origin of Green's DNA in the victim's underwear. At trial, the victim acknowledged the two had been sexually active with one another in the past. The statement that the mother heard was made at a time when the victim and Green were still seeing one another but shortly before they had ended their relationship.

{¶ 43} The trial court became concerned about the content of the statement and proffered the testimony outside the presence of the jury. The court determined that the statement was remote in time, and concluded the statement was "simply too inflammatory." However, the trial court did not find on the record that the probative value of the statement was substantially outweighed by the prejudicial effect as required by Evid. R. 403(A). It nevertheless disallowed the jury from hearing the testimony.

{¶ 44} On appeal, Green argues the statement was made only months before the two broke up and the statement goes to motive and a willingness to fabricate. It also provides an innocent explanation for the origin of Green's DNA in the victim's underwear. Green argues the statement was not inflammatory but rather immensely exculpatory.

{¶ 45} Interestingly, the state's response reiterates its position from the first two assignments of error, "that Defendant always had a means to challenge his competence, the filing of a not guilty by reason of insanity plea or a suggestion of incompetence to the trial court. Defendant failed to make these motions." Reiterating its prior positions is non-responsive to Green's arguments.

{¶ 46} Next, the state argues Green's mother has "every reason to fabricate a story to make her son appear more favorable in the eyes of the jury." However, the speculation

about Green's mother goes to credibility and not admissibility. Impeaching a witness, presenting contradicting evidence in rebuttal, and cross-examination are tools any good prosecutor employs to challenge the credibility of witness testimony.

{¶ 47} Neither the state nor the record articulates why the testimony was considered inflammatory. While it may be detrimental to the state's case if unchallenged, there is an absence of any Evid. R. 403(A) analysis which demonstrates that the prejudicial effect substantially outweighs the probative value.

{¶ 48} Evid. R. 403 has been characterized as an "extraordinary remedy" because it permits the exclusion of relevant evidence and should only be used sparingly. *State v. Sutherland*, 2d Dist. Darke No. 2021-CA-4, 2021-Ohio-2433 ¶ 29. When considering whether the relevance of the evidence must be excluded because it is outweighed by undue prejudicial effect, the evidence must be viewed in the light most favorable to the party offering the evidence. Additionally, the probative value must be *substantially* outweighed, not just outweighed. "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R.403(A). In the matter sub judice, Evid. R. 403(A) was not correctly applied.

{¶ 49} The record does not support the exclusion of Green's mother's testimony. Therefore, the exclusion of the proffered testimony was unreasonable without a proper Evid. R. 403(A) analysis. The proffered testimony was so central to the facts presented to the jury that its exclusion cannot be considered harmless. Therefore, reversal on the third assignment of error is required as well.

{¶ 50} For those reasons, and with regard and respect for my colleagues, I respectfully concur in judgment only.